[No. 4,668.]

HENRY GLASS v. MONROE ASHBURY, AUDITOR OF THE CITY AND COUNTY OF SAN FRANCISCO.

TRAINING SHIP IN SAN FRANCISCO.—The Board of Supervisors of the city and county of San Francisco has no authority, under the Act of March 16, 1874, to accept from the government of the United States a vessel for a training ship for boys, if the Act of Congress granting the vessel contains provisions inconsistent with said Act of March 16.

POWER OF A MUNICIPAL BODY.—When the municipal authorities of a city act under an authority derived from a Statute, they must follow strictly its provisions.

APPEAL from the District Court, Nineteenth Judicial District, City and County of San Francisco.

The Legislature of the State of California passed an Act, approved March 16, 1874, authorizing the Board of Supervisors of the city and county of San Francisco to procure a ship, on board of which to instruct boys in seamanship, to be called a training ship, to be anchored in the bay of San Francisco, except when employed in cruising. The Board was authorized to apply to the Government of the United States for the use of a vessel, and to accept the services of any officer whom the United States might detail to service on the vessel, and upon such terms and conditions, consistent with the provisions of the Act, as the United States might prescribe. The Board was also authorized to adopt rules for the instruction of the boys, and to employ instructors and employees, and fix their compensation. The Board was further authorized to remove boys from the Industrial School to the ship; and it was provided that any Court which had sentenced boys to confinement in the Industrial

School, might modify its judgment so as to change the place of confinement to the ship, and that the Municipal Criminal Court and the Police Court of the city might sentence any male person under eighteen years of age, who should be convicted of a misdemeanor, to serve his term of imprisonment on board the ship. The Board was authorized to direct to be paid out of the general fund of the city the amount of money necessary to carry out the provisions of the Act, not exceeding $25,000 per annum. Congress passed an Act, approved June 20, 1874, which, in its terms, authorized the Secretary of the Navy to furnish, on the written application of the Governor of a State where a nautical school was established, or was about to be established, a suitable vessel of the navy; and also authorized the President to detail officers of the navy to act as superintendents and instructors. The Governor made a written application to the Secretary of the Navy for the sloop of war *Jamestown*, to be used for the purposes contemplated in said acts, and that Lieutenant-Commander Henry Glass, of the United States Navy, be detailed to act as commanding officer. The Secretary of the Navy complied with the request. His services were accepted by the Board of Supervisors, and his bill for services, for the month of November, 1874, was allowed by the Board at one hundred and fifty dollars. The bill was presented to the Auditor, who refused to audit the same. This was an application for a writ of mandate to compel the Auditor to audit the bill. The petition was filed February 12, 1875. The Court below directed the writ to issue, and the defendant appealed.

The other facts are stated in the opinion.

*W. C. Burnett*, for the Appellant.

Each of these Acts—the Act of our Legislature and said Act of Congress—are valid laws; and the appellant has never contended to the contrary. They were passed by different legislative bodies, each independent of the other, and upon subjects as to which they were each empowered to legislate. The Act of our Legislature, then, is complete in itself, and consistent in its several provisions inherently;

and the same may be said of the Act of Congress. But when we come to act or attempt to act, in pursuance of our Act of the Legislature, we are compelled to consider both acts, the Act of our Legislature, and the Act of Congress, together; not because either Act is dependent upon the other for its own existence, but because aside from general principles looking in the same direction, the 8th Section of our Act declares that: "This Act shall not be in force or take effect until and unless the Government of the United States shall furnish to the said City and County of San Francisco, a suitable vessel, fully equipped for the purpose indicated in this Act."

The Act of the Legislature providing for the establishment, etc., of the training ship cannot be carried into effect, in accordance with its letter, spirit and scope, by the use of any ship which Congress has authorized this port to be furnished with; for the reasons that said Act requires the placing at the school that may be established thereunder of persons sentenced as a punishment or commutation of punishment for crime. No power is given to the Board of Supervisors to designate the boys to be placed in the school.

But respondent's counsel say that we ought to construe the Act to make it consistent with the Act of Congress, by rejecting as surplusage all parts of the Act concerning Industrial School boys under sentence, and boys to be sentenced; but they seem to forget that we are not looking at this statute with a view to make it consistent with the Act of Congress, but we are looking into the Act of our own Legislature, as a domestic Act, to see in what spirit it, as an independent act, was conceived.

The word "crime," in the sense in which it is used in the proviso to the Act of Congress, includes the term "misdemeanor," and the words "commutation of punishment" covers the case of a sentence by a Court, directly or indirectly, to the training ship. Is there not within this section evidence that all, or none, of the provisions of the Act were to be carried into effect? This is the section providing for the pecuniary means with which to carry the

whole scheme into operation; and the language is, * * "to direct to be paid out of the general fund of said city and county the amount of money necessary to cary out fully all the provisions of this act."

*James C. Zabriskie* and *E. D. Sawyer*, for the Respondent.

Statutes directing the mode of proceeding by public officers are directory, and are not regarded as essential to the validity of the proceedings themselves, unless it be so declared in the statutes. (Cooley's Con. Limitations, p. 74 and fol., and cases there cited; Sedgwick on Stat. and Con. Laws, p. 375 and fol., and cases there cited; *People* v. *Cook,* 14 Barb. 290; *People* v. *Cook,* 8 N. J. 67; *People* v. *Supervisors of San Francisco,* 36 Cal. 595; *Palache* v. *Pac. Ins. Company,* 42 Cal. 418.)

The following is the last proviso in the Congressional Act: "And provided further, that no person shall be sentenced to or received at such schools as a punishment or commutation of punishment for crime."

Sections 3, 4 and 5 of the Legislative Act "authorizes" the Criminal Courts of San Francisco to sentence boys to said training ship as a punishment for crimes, and the Board of Supervisors to transfer those thus sentenced from the Industrial School to the training ship, and from the training ship to the Industrial School.

In the case of *The People* v. *The Supervisors of Orange,* (17 N. Y. 235), the following occurs: "A Legislative Act is not to be declared void upon a mere conflict of interpretation between the Legislature and the judicial power. Before proceeding to annul by judicial sentence, what has been enacted by the law-making power, it should clearly appear that the Act cannot be supported by any reasonable intendment or allowable presumption." (*The Sun Mutual Insurance Company* v. *The City of New York,* 5 Sandf. 10; *Palache* v. *Pac. Ins. Company,* 42 Cal. 430.)

This object as expressed in the two Acts is to establish a school on shipboard for the instruction of "boys" or "youths" in navigation, seamanship and mechanical trades. This is the only object or purpose authorized by those Acts

to be secured.   In that regard, therefore, there is a perfect agreement.

Sections 3, 4 and 5 of the Legislative Act "authorizes" certain Criminal Courts in San Francisco to sentence boys convicted of a misdemeanor to the training ship; while the Act of Congress declares "that no person shall be sentenced to or received at such school, as a punishment or commutation of punishment for crime."

It is perfectly manifest that the Legislative sections last referred to do not in any manner relate to or affect the primary and only purpose expressed in both acts under consideration, to wit: education in navigation and seamanship.   Those sections merely provide a means by which said training ship may be supplied with boys, to be instructed in the branches expressed in said acts.   All the remaining sections, to wit, sections 1, 2, 6, 7 and 8, are in full accord with the Act of Congress.

In determining whether or not acts which relate to the same subject are "consistent," "regard is to be had, not so much to the exact phraseology in which the intent of the Legislature has been expressed, as to the general tenor and scope of the entire Legislative scheme embodied in the Act."

Applying the term "consistent" according to the foregoing rule, the Legislative and Congressional Acts are perfectly consistent.


By the Court, WALLACE, C. J.:

The authority of the Board of Supervisors to accept a ship from the Government of the United States, and expend the public moneys in its maintenance as a training ship, is derived wholly from the Act of the Legislature of March 16, 1874, entitled " an Act to establish and maintain a training ship or ships in the city and county of San Francisco."   It is therein enacted that the Board is authorized to apply for and accept from the Government a vessel, and also the services of officers or men to be detailed by the Government for service on board of any such vessel, "upon

such terms and conditions consistent with the provisions of this Act, as the said Government may prescribe." Of course it must unavoidably result that the Board had no authority to accept the vessel, if the conditions imposed by Congress should prove inconsistent with the provisions of the Act of the Legislature of this State. Now some of the provisions—perhaps the most important of all—contained in the Act of the Legislature referred to, and found in its third and fourth sections, authorize the Board to remove from the Industrial School and place upon the training ship " such boys as they may designate;" that any Court which has heretofore sentenced any boy to confinement in the Industrial School may modify its judgment so as to change the place of confinement of such boy from the Industrial School to the training ship, and that the Municipal Criminal Court and the Police Court of the city and county of San Francisco may sentence any male person under eighteen years of age, who shall be convicted of any misdemeanor, to serve his term of imprisonment on board of the training ship. In short, the legislative scheme plainly developed in the Act, was to constitute the training ship, which the Board were authorized to accept and maintain at the public expense, substantially a part of the Industrial School, in which juvenile offenders were to be confined pursuant to the judgment of, certain Criminal Courts of the State. This is in fact the prominent feature of the legislative scheme discernible in the Act referred to, and which was apparently the main purpose which prompted the enactment itself. As observed already, the Board were not authorized to accept a ship from the Government, unless the conditions imposed by that Government should be consistent with the provisions of the Act of the Legislature.

In June, 1874, the Congress of the United States passed an Act authorizing the Secretary of the Navy to furnish a training ship—a suitable vessel to be used as a training ship and nautical school—at the port of San Francisco, but with the proviso " that no person shall be sentenced to or received at such schools as a punishment or commutation of punishment for crime."

It certainly requires no argument to show that the condition imposed by the Government of the United States, as found in the proviso, is utterly inconsistent with the provisions of the Act of the Legislature under which the Board is to act in accepting the ship.  The provisions found in the Act of the Legislature cannot be enforced, except through a palpable disregard and violation of the terms of the proviso found in the Act of Congress.  The former expressly authorizes the confinement on board the training ship of a certain class of offenders against the criminal laws of the State as a punishment or commutation of punishment for crimes of which they are or may be convicted, while, as we have seen, the latter expressly and in terms, prohibits it.

It would indeed be difficult to imagine a more palpable or irreconcilable inconsistency between the provisions of the Act of the Legislature and that of Congress than is here pointed out, and it results that until some change shall be effected in the provisions of one or the other of these acts, the Board can have no authority to accept the proffered training ship.

Judgment reversed.

Mr. Justice McKINSTRY did not express an opinion.