[Civ. No. 3002.    Third Appellate District.—September 17, 1925.]

CITY OF SACRAMENTO (a Municipal Corporation), v. INDUSTRIAL ACCIDENT COMMISSION and EVA STREEPY, Respondents.

[1] WORKMEN'S COMPENSATION ACT—MEANING OF "COMPENSATION"— CONSTITUTIONAL LAW.—The word "compensation," as used in section 8½ of article XI of the state constitution, which gives to municipalities full power and authority to provide for the compensation of all officers and employees, does not carry the same meaning it does as used in section 21 of article XX of the constitution, which vests the legislature with full power to create and enforce a complete system of workmen's compensation by appropriate legislation—in the former it being used as a synonym for the word "wages" in return for services performed, whereas in the latter it is used in the sense of indemnity to be awarded an injured employee, or the making amends for losses sustained, or the paying of an indemnity or an equivalent to those dependents who have suffered such losses.

---

1.   See 27 Cal. Jur. 265.

[2] Id.—Public Policy of the State—Municipal Affairs—Adoption of Municipal Pension Law.—The making of "compensation" to or the indemnification of the widow, or the family, of a deceased employee, or the awarding of a sum calculated upon the standard of the earning capacity of the deceased, is a matter of public policy of the state, as contra-distinguished from municipal affairs; and the adoption by a municipality of a pension system does not take the place of the workmen's compensation law.

(1) 12 C. J., p. 230, n. 26, 30, 33, 34, p. 231, n. 46; Workmen's Compensation Acts, C. J., p. 11, n. 59 New.    (2) Workmen's Compensation Acts, C. J., p. 11, n. 59 New.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission.    Award affirmed.

The facts are stated in the opinion of the court.

R. L. Shinn for Petitioner.

Warren H. Pillsbury for Respondents.

PLUMMER, J.—This matter is before the court upon the petition of the City of Sacramento to review the action of the Industrial Accident Commission of the state of California awarding compensation to the respondent Eva Streepy on account of the death of her husband occurring while in the employ of the above-named petitioner.

The record before us shows that William E. Streepy and the respondent Eva Streepy were on the twenty-fourth day of May, 1924, and prior thereto, husband and wife; that on the 24th of May, 1924, the said William E. Streepy, while in the employ of the City of Sacramento as an electrician, was instantly killed by reason of an electric shock which caused him to fall from a high pole on which he was then working, the neck of said Streepy being broken by coming in contact with the ground below.    After all the proceedings provided for to be taken in such cases, the respondent Industrial Accident Commission awarded to the said Eva Streepy the sum of $5,000, $100 thereof being allowed for funeral expenses and the remainder thereof as compensation to be paid at the rate of $20.83 per week, beginning with the

2.  See 27 Cal. Jur. 266.

date of the death of the said William E. Streepy, of which amount $1,083.16 had accrued at the date of the entry of the award made by said Commission. No contention is made as to the correctness of the award if jurisdiction to enter the same existed.

The award of the Commission is contested upon two grounds:

First: That the compensation of all officers and employees of a city is a matter purely within the jurisdiction and control of the city of which such persons may be officers or employees, and,

Secondly: That the making of provision for a sum of money to be paid either to an injured employee, or to his widow or family, in the event of his death occasioned by reason of his services to the city, is a purely municipal affair.

In determining the pertinency of these objections or contentions, several sections of the state constitution must be considered. Section 6 of article XI, as amended in 1914, provides that municipalities operating under freeholders' charters adopted since 1914, or amended to conform thereto, may "make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws." Section 8 of article XI contains a similar provision. Section 8½ of article XI of the constitution specifies that a city charter may "provide the manner in which, the method by which, the times at which and the terms for which the several county and municipal officers and employees . . . shall be elected or appointed and for their recall and removal and their compensation," etc., and section 11 of article XI of the constitution further authorizes "any county, city, town, or township to make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws," the last amendment to this section being in 1918. At the same election, at which the last of the above-named sections was amended, the proposed amendment to section 21 of article XX of the state constitution was also ratified. That section is as follows:

"The legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce, a complete system of workmen's compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for injury or disability, and their dependents for death incurred or sustained by the said workmen in the course of their employment, irrespective of the fault of any party. A complete system of workmen's compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workmen and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workmen in the course of their employment, irrespective of the fault of any party; also full provision for securing safety in places of employment; full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from effects of such injury; full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all its aspects, including the establishment and management of a state compensation insurance fund; full provision for otherwise securing the payment of compensation; and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character; all of which matters are expressly declared to be the social public policy of this state, binding upon all departments of the state government.

"The legislature is vested with plenary powers, to provide for the settlement of any disputes arising under such legislation by arbitration, or by an industrial accident commission, by the courts, or by either, any, or all of these agencies, either separately or in combination, and may fix and control the method and manner of trial of any such dispute, the rules of evidence and the manner of review of decisions rendered by the tribunal or tribunals designated by it;

provided, that all decisions of any such tribunal shall be subject to review by the appellate courts of this state. The legislature may combine in one statute all the provisions for a complete system of workmen's compensation, as herein defined.

"Nothing contained herein shall be taken or construed to impair or render ineffectual in any measure the creation and existence of the industrial accident commission of this state or the state compensation insurance fund, the creation and existence of which, with all the functions vested in them, are hereby ratified and confirmed."

[1] By reference to these sections it will be seen that the first question to be determined is the sense in which the word "compensation" is used therein.

Section 8½ of article XI of the state constitution gives to municipalities full power and authority to provide for the compensation of all officers and employees, from which it is argued that if the city charter of the City of Sacramento makes any provision for any sum of money to be paid to the family of any deceased officer or employee, then and in that case, section 21 of article XX does not apply and the Industrial Accident Commission has no jurisdiction to make an award. In this particular our attention is called to sections 168 and 173 of the city charter of the City of Sacramento adopted by the voters of the City of Sacramento and ratified by the legislature of the state of California at a later date than the adoption of any of the amendments to the state constitution to which we have referred. Section 168 of the charter of the City of Sacramento reads: "All employees of the City of Sacramento who have served in the city continuously for twenty years in any capacity except as-an elective officer or City Manager shall be eligible to relief and pension."

Section 173 is as follows: "The pension board shall provide as follows for the family of any city employee of the class eligible to pensions who may be killed while in the performance of his duty: (1) Should the decedent leave a widow, she shall, as long as she remains unmarried, be paid a pension equal to one-half of the salary paid the decedent at the time of his death. (2) Should the decedent leave no widow, but leave any child or children under the age of sixteen years, or should he leave a widow who shall die and leave his

child or children under the age of sixteen years, such child or children collectively shall receive a pension equal to one-half the salary paid to the father at the time of his death, until the youngest child attains the age of sixteen years; provided, that no child shall receive any such pension after attaining the age of sixteen years.''

A third subdivision is added which is not material here. Other provisions of the charter relating to pensions for disabled persons are likewise made dependent upon the employee having served the city continuously for a period of twenty years. In the case at bar the employee had served the city but three years and, therefore, no provision has been made for the compensation of his dependents, irrespective of the meaning of that word as used in section 8½ of article XI of the state constitution, giving to municipalities full power and authority to fix the compensation of its officers and employees, but waiving this omission, does the word "compensation," as it appears in section 8½ of article XI, carry the same meaning as does the word "compensation," as used in section 21 of article XX? The mere fact that the same word is used in both instances does not necessitate the conclusion that the same meaning is attached thereto, or that the legislature, or the voters of the state understood the use of the word to mean the same in both instances. The context of the sections must be considered and the word "compensation" must be read in connection with not only the words where it appears, but also in reference to the subject matter of which the section purports to treat. In section 8½ of article XI, the salary and wages of officers and employees constitute the subject matter, and the authority is there given to fix the salaries and the wages, but instead of using the two words "salary and wages" the word "compensation" is employed. In section 21 of article XX, the subject matter being considered is the indemnifying or relieving an injured employee, or his dependents from becoming objects of public charity. In the one instance, mere salary or wages for services performed constitutes the matter being considered, while in section 21 of article XX there is no thought whatever of paying an injured employee, or awarding a sum of money to his dependents on account of services being performed by him. It is true that the salary or wages theretofore earned by the injured employee, and of which

he was capable of earning, is accepted as the standard for fixing the indemnity as compensation to be awarded to the injured employee, but that does not in any sense convey the idea that compensation is being paid for services rendered or being rendered by the injured employee.

That we are right in this interpretation of the use of the word "compensation" in the different sections is fully sustained by the interpretations which have heretofore been given to this word. In 12 Corpus Juris, page 229, we find the following legal definitions of the word "compensation": "An act which a court orders to be done, or money which a court orders to be paid, by a person whose acts or omissions have caused loss or injury to another, in order that thereby the person damnified may receive equal value for his loss, or be made whole in respect of his injury; a consideration; the consideration or price of a privilege purchased; an equivalent in money for a loss sustained; an equivalent given for property taken or for an injury done to another; the giving back an equivalent in either money, which is but the measure of value, or in actual value otherwise conferred; the rendering an equivalent in value or amount; indemnification; making amends; payment of damages; a recompense in value; a recompense given for a thing received; a recompense or reward for some loss, injury, or service, especially when it is given by statute; remuneration for the injury directly and proximately caused by a breach of contract or duty; remuneration or satisfaction for injury or damage of every description; that return which is given for something else; that which is necessary to restore an injured party to his former position. The term etymologically suggests the image of balancing one thing against another, its primary signification being equivalence, and the secondary and more common meaning something given or obtained as an equivalent.

"As salary or wages. The word also signifies the remuneration or wages given to an employee or officer, but it is not exactly synonymous with 'salary.'"

It thus appears that the use of the word "compensation" in the sense of meaning wages is the last given and also the interpretation which is last given to that word, but, even in this sense, it is used only to signify compensation for services

performed, the correct and accurate term being wages, which is the return made for work done or services performed.

We therefore conclude that the word "compensation," as it appears in section 8½ of article XI is a synonym for the word "wages," as applied to the facts of this case, and refers to the power given the municipality of Sacramento to fix the amount of money, to wit, the $7 per day that was being paid to the deceased William E. Streepy, in return for the services that were being performed by him, and has no reference whatever to the compensation or indemnification being made to the widow of William E. Streepy, by reason of his death while in the employ of the city. It is in some measure an attempt to pay an equivalent in money for the losses sustained by her and is not an act on the part of the city either within the meaning or even the letter of section 8½ of article XI of the state constitution, when the subject matter of that section is taken into consideration.

While not directly in point by reason of the difference in the facts involved, the case of *Jackson* v. *Wilde,* 52 Cal. App. 259 [198 Pac. 822], draws a very clear distinction between what is meant by the word "compensation" when accurately used and interpreted and the word "salary" when properly employed, and draws the distinction which we are making here between a salary that might be earned under section 8½ of article XI and a benefit that might be awarded, or that might become due under section 21 of article XX.

Our attention has been called to no authorities directly upon the point involved, but from the foregoing reasoning we conclude that the first contention of the petitioner must be answered in the negative.

[2] Is the making of "compensation" to or the indemnification of the widow, or to the family, of the deceased employee, or the awarding of a sum calculated upon the standard of the earning capacity of the deceased a municipal affair? It would serve no useful purpose to enter into a lengthy discussion of just what are municipal affairs. In 18 California Jurisprudence, page 786, we find several comprehensive definitions, which, in a word, all relate to the internal business of a city such as prosecutions for violations of charter provisions, municipal elections, compensation and removal of public officers, issuing bonds for im-

provements, erection of municipal buildings, provisions for
a municipal pension system, control of almshouses, the mat-
ter of opening, widening and vacating streets, and such like
powers, but nowhere do we find any legal definition which
extends the meaning of the words "municipal affairs" so
as to include the indemnification of dependents on account
of the death of an employee, nor do we find that the pension
system has been ever interpreted to take the place of a
workmen's compensation law.   The mere fact that the citi-
zens of a municipality may be vitally interested in making
provision for dependents does not transform a state policy
into a municipal affair.   The pension system, we think, is
really the outgrowth of the idea that public officers and
employees are not paid an adequate sum in many instances,
and therefore a portion of the salary paid, after the age of
disability has been reached, shall be allowed the retired
officer or employee to make amends for the failure to pay
a sufficient salary or wage in the first instance and does not
come within the theory, purpose or contemplation of the
state workmen's compensation law at all.   The school law
of the state affects every municipality, but it is nevertheless
a state regulation and not a municipal matter.   Likewise, it
has been held that the Wright Act (Stats. 1921, p. 79),
is a law of the state and takes precedence over the regu-
latory power of cities concerning the liquor traffic.   The
same is true in relation to the Motor Vehicle Act (Stats.
1915, p. 397).   These questions are so decided in the fol-
lowing cases: *Piper* v. *Big Pine School Dist.,* 193 Cal. 664
[226 Pac. 926], *Ex parte Daniels,* 183 Cal. 636 [21 A. L. R.
1172, 192 Pac. 442], and *In re Mingo,* 190 Cal. 769 [214
Pac. 850].   We might also cite the cases having to do with
public utilities in relation to rates of fares, etc., such as the
case of *Civic Center Assn. of L. A.* v. *Railroad Commission,*
175 Cal. 441 [106 Pac. 351].

The section of the constitution upon which the state com-
pensation insurance and safety laws are based contains
within itself some definite statements which exclude the idea
of such matters being relegated to the limited purview, con-
trol or jurisdiction of municipalities.   Some of these words
in the section (article XX, sec. 21) are: "The legislature
is hereby expressly vested with plenary power, unlimited

by any provision of this constitution, to create and enforce a complete system of workmen's compensation," etc., and to enforce the liability upon all persons. It is needless to add that the word "person" includes a municipality, and then after setting forth with a great deal of detail the powers to be conferred by legislation upon any commission that might be created, the section contains the following: "All of which matters are expressly declared to be the social public policy of this state, binding upon all departments of the state government." We think that plenary power means in this sense unlimited by any other provision of the constitution relating to the indemnification of either employees or their dependents. That the word "compensation" is used in the sense of making amends for losses sustained, or the paying of an indemnity or an equivalent, so far as it is possible to do so in money value, to those dependents who have suffered such losses. And this is the settled policy of the state binding upon all the departments thereof and is not limited in its scope and application by the territorial boundaries of municipalities, but is coextensive with the territorial limits of the state itself and is just as inclusive as its words purport to be, and, therefore, as said in the section "binding upon all departments of the state government." That counties and municipalities are departments of the state government is well settled. (*Chico High School Board* v. *Supervisors*, 118 Cal. 115. [50 Pac. 275]; *Payne & Dewey* v. *Treadwell*, 16 Cal. 221; *San Francisco* v. *Canovan*, 42 Cal. 542.)

We do not find any conflict in the sections of the state constitution which we have heretofore set forth when the words are interpreted according to their true use and meaning, but if there were such, we think the language of section 21 of article XX is directed to a specific subject and has for its purpose the establishment and enforcement of a public policy of the state, and is not limited by any general language that might be found elsewhere in the same instrument, of which section 21 is a part, and especially when that general law is directed to a different subject matter.

We therefore conclude that the making of compensation to the dependents of employees is a matter of public policy of the state, as contradistinguished from municipal affairs,

The second contention of the petitioners must also be answered in the negative.

The award is affirmed.

Finch, P. J., and Hart, J., concurred.