[Civ. No. 12941. First Dist., Div. One. Jan. 14, 1946.]

THOMAS J. HIGGINS, Appellant, v. JOHN J. LYNCH, as City Manager et al., Respondents.

Harry A. Houser and Owen D. Richardson for Appellant.

Robert E. Cassin, City Attorney, for Respondents.

PETERS, P. J.—By this proceeding in mandamus petitioner, Thomas J. Higgins, seeks to nullify the appointment of Edward A. Powers as second assistant fire chief of San Jose, and to compel the civil service commission and the city manager of that city to appoint him to that civil service position. The trial court denied the requested relief, and Higgins appeals.

The facts are not in dispute. Higgins and Powers are both captains in the fire department of San Jose. Prior to November 22, 1944, Higgins, as the result of an examination, had been placed on the eligible list for the higher-paying and more responsible position of second assistant fire chief. Powers was not then, or at any other subsequent time, on that list. On that date, there being a vacancy in the position of second assistant fire chief, the city manager, John J. Lynch, acting pursuant to the city charter provisions, requested the civil service commission to furnish an eligible list for that position. The commission, on the same day, certified three names, one being that of Higgins, and another being that of the then chief of the fire department, who subsequently withdrew his name from consideration. On the same day the city manager rejected the proffered names, giving as his reasons that the eligible list was twenty-one months old; that it had but two eligible names on it; that members of the department now in the armed forces would shortly return and be eligible to take the next examination; and that before the next examination a training school should be conducted to prepare all captains for the examination. On the same day Lynch appointed Powers to the position for a period of fifteen days.

The civil service commission found that the reasons assigned were not "good reason" as those words are used in the charter, but granted the city manager's request that he be permitted

to file a supplementary set of reasons. On December 4, 1944, the commission again submitted to the city manager for the position two names, one being that of Higgins. These were the only two names left on the list. On the same day the city manager rejected the list and gave as his reasons that efficiency requires that eligible lists be made up after a representative group of eligibles have taken the test; that the submitted list was twenty-one months old and was based on an examination in which only six of the eligible captains participated; that there were now fourteen captains eligible to take the examination; that in addition two former captains in the department are about to be released from the armed forces and will be eligible; that in order to secure personnel of ability and leadership the department should conduct a school of instruction and carry on a planned training program for all captains; and that this will assure that all captains will be trained in new fire fighting methods and in the use of new materials that have come into use since the last examination for captain was held.

In addition he stated: "The two persons on the eligible list do not have, in my opinion, a thorough knowledge of the principles and practices of modern fire fighting and of the equipment, materials and apparatus used in such work, and which is required of a person qualified to be a Second Assistant Fire Chief. . . . I further believe that they do not have in the measure desired sufficient knowledge of fire-prevention methods, knowledge of training methods, ability to direct and co-ordinate the activities of a large number of subordinates, ability to analyze emergency situations and adopt a quick and effective course of action, nor the ability to lead a large number of men and maintain discipline and morale.

"This opinion is confirmed in part by a study of the Probst Service Reports appraising the service value of fire department personnel. . . ."

On the same day the commission found that the city manager had stated "good reason" for his rejection, and the city manager thereupon extended the temporary appointment of Powers pending the creation of another eligible list. Both parties in their briefs state that in March of 1945 a new examination was given and that no list was then created because all applicants, including Powers, failed to pass. It was stipulated that at the date of trial the name of Higgins was the only one

left on the list, both the chief and the other nominee having withdrawn.

It is the contention of Higgins that under this state of facts he is entitled to the position in question and that the appointment of Powers was beyond the power of the city manager. It is the theory of appellant that the city manager had no power to make a temporary appointment of any man not on the eligible list when there was an existing eligible list, and that the appointing power has no power to reject names on the eligible list when to do so would exhaust the list.

The proper solution of the problem, of course, depends upon the city charter provisions and the lawful rules adopted by the commission. Civil service is a municipal affair, and as such the charter of the city and the laws enacted and the rules adopted pursuant thereto govern the rights of the commission, the appointing power and the employees. (*Dierssen* v. *Civil Service Commission*, 43 Cal.App.2d 53 [110 P.2d 513]; *City of San Jose* v. *Lynch*, 4 Cal.2d 760 [52 P.2d 919].)

The pertinent provisions of the charter of San Jose are sections 104, 105 and 106.

Section 104 provides: ''The commission, subject to the approval of the council, shall adopt, amend, and enforce a code of rules and regulations, providing for appointment and employment in all positions in the classified service, based on merit, efficiency, character and industry, which shall have the force and effect of law. . . .''

Section 105 provides: ''The secretary shall provide examinations in accordance with the regulations of the commission and maintain lists of eligibles of each class of the service of those meeting the requirements of the said regulations. Positions in the classified service shall be filled by the city manager from a list of the three persons, if there be that number, on the eligible list who have received the highest standing on examination; provided, that for good reason shown the city manager may reject all three and call for a new list.''

Section 106 provides: ''The commission shall provide for promotion to all positions in the classified service based on competitive written examinations with due consideration to records of efficiency, character and seniority.''

It has been held, in interpreting these sections, that under section 106 the commission determines eligibility for promotion within the limits fixed by the section, subject to rules

adopted pursuant to section 104. (*Haub* v. *Tuttle*, 80 Cal.App. 561 [251 P. 925].) The applicable rule adopted by the commission pursuant to section 104 is article V, section 1, of the rules and regulations. It provides: "Positions in the Classified Civil Service are filled by the City Manager as provided in Section 105 of the charter of the City of San Jose. Upon his requisition, therefore, the Secretary shall furnish the names of three persons, if there be that number, from the head of the eligible list, for each position to be filled. . . . In case of rejection by the City Manager of all the names submitted to him at one time, the Secretary shall continue furnishing new lists as long as there be eligibles listed. Names of persons certified, but not appointed shall be returned to their original positions upon the eligible lists."

Article VI provides: "The appointing power may make temporary appointments to remain in force until an eligible list shall have been created, or for a period not to exceed fifteen days."

Article VII, section 3, provides: "No applicant for promotion shall have his name placed upon an eligible list therefor until he shall have passed such medical examination, and mental and physical tests as the Commission shall prescribe, to determine whether the applicant for promotion to any given position possesses the necessary standards of health, mind and physique therefor."

Appellant urges that the giving to the city manager the power to reject the entire eligible list for "good reason," and then to make a temporary appointment outside the list, violates the letter and spirit of the charter provisions. It is argued that the temporary appointing power exists solely by virtue of a rule, and that the rule, so construed, annuls the provisions of the charter, and violates the fundamental purposes of civil service.

These arguments lack merit. While it must be conceded that to give the appointing authority the power to reject an entire list of eligibles for good cause, after they have been found fully qualified by examination and by their records, is a most unusual power, and one at variance with many other civil service systems, yet the policy of such legislation is not for the courts. Civil service being a municipal affair the courts have no power to determine the wisdom of a charter provision setting forth the means by which the fitness of an applicant is

to be determined—that is, a legislative and not a judicial function. (See cases collected 10 Am.Jur., p. 923, § 4.)

Under the rule which makes section 105 of the charter applicable to promotional appointments, the city manager is authorized for "good reason" to reject the three names certified to him by the commission. In the instant case, shortly after the list was submitted one of the nominees withdrew so that there were only two names submitted, and these two together with the chief of the department who had withdrawn his name, constituted the entire list. The charter obviously contemplates that the city manager shall have some discretion in his choice. He can make no permanent appointment outside the list. The provision in the rules that he can make a temporary appointment where there is no list, although not referred to in the charter, is not in violation thereof because such power would obviously be implied even though not mentioned in the charter because the city government must continue to function whether or not there is an eligible list. Neither the charter nor the rules give the city manager unlimited power to reject the list. There must be "good reason" shown. The charter is silent as to who shall determine the "good reason"; but the city manager and the commission have construed the clause to mean that the commission must determine whether good cause has been shown. This is a reasonable construction. It places a reasonable restraint upon the otherwise uncontrolled power of the city manager. It is obvious that after the commission has determined the qualifications of applicants, and has prepared a list of eligibles, all of whom it has found are qualified for the position, it is going to be zealous of its powers and to scrutinize carefully the reasons given by the appointing power for rejecting the list. That is exactly what happened here.

When the city manager first rejected the list the commission rejected his reasons. He then filed supplementary reasons. Whether those were good or bad reasons rested with the commission. Its conclusion cannot be challenged except in cases of fraud, or of arbitrary or capricious action. (*Dierssen* v. *Civil Service Commission*, 43 Cal.App.2d 53 [110 P.2d 513].) Here neither in the petition nor in the briefs is any such charge made. It is quite obvious that the commission's finding, under the circumstances, is conclusive.

From the above analysis it is quite clear that the city manager had the power to reject the two names on the list for "good reason." When that exhausted the list the power to

make a temporary appointment must exist. Here it is provided by rule. That rule is not in contravention of the charter, but is supplementary thereto, and would be implied even if not expressed. The only question that exists is whether the temporary appointment can be made outside the list. If the list were exhausted—i.e., there were no names on it—obviously under article VI of the rules the appointment would have to be made outside the list, and the rule so contemplates. Where there is a rejection, for good reason, of all names on the list, that list, so far as that particular vacancy is concerned, has been exhausted, and the same situation exists as if there were no list at all. It is true that names certified but not appointed are put back on the list, and that includes names certified and rejected for good reason, but, so far as that particular job is concerned, those names no longer are part of an eligible list satisfactory to the appointing power.

As we interpret the provisions of the San Jose charter, and the rules adopted pursuant thereto, the people of that community have determined that the commission shall be the exclusive judge of the eligibility of applicants for permanent original or promotional positions, but that the city manager shall have some discretion in selection, even to the extent of rejecting an entire list for reasons determined to be valid by the commission. Further, it has been provided that when no eligible list exists, or the list has been rejected, the appointing power may make temporary appointments. In the very nature of things this power must include the right to ignore persons on the list, who, for "good reason," have been rejected.

The judgment appealed from is affirmed.

Ward, J., and Ogden, J. pro tem., concurred.