[Civ. No. 13472. First Dist., Div. One. July 21, 1947.]

SARTO J. CUNNINGHAM et al., Petitioners, v. EMMETT H. HART et al., Respondents.

Buckley & Ehlers for Petitioners.

F. B. Fernhoff, City Attorney (Oakland), and John W. Collier, Assistant City Attorney, for Respondents.

BRAY, J.—Petition for writ of mandate to compel respondent Civil Service Board of the city of Oakland to reestablish a cancelled civil service eligibility list.

Petitioners are two captains in the Oakland Fire Department who had successfully passed promotional civil service examinations for the position of battalion chief and whose names were the only ones remaining on the eligible list, which normally would not have expired until September 17, 1947. At the request of the city council, the city attorney rendered an opinion to the civil service board concerning the effect of section 395.1 of the Military and Veterans Code, which section was added by the Legislature in March, 1946. Upon receipt of this opinion the board, on March 11, 1947, passed a resolution cancelling the eligible list and instructing the secretary of the board to prepare examinations to establish new eligible lists. This resolution reads: "WHEREAS, twenty-seven members of the Fire Department having been granted military leaves to serve in the armed forces of the United States, and having returned from military leaves to their positions in the Fire Department, and by such service having forfeited their rights of participation in one or more of the promotional examinations No. 1360 for Engineer, No. 1361 for Lieutenant, and No. 1363 for Battalion Chief; therefore, in accordance with Paragraph (b), Sec. 395.1 California State Military and Veterans Code, be it

"RESOLVED, That prevailing Eligible List No. 1360 for Engineer, No. 1361 for Lieutenant, and No. 1363 for Battalion Chief are hereby cancelled effective March 11, 1947, and the Secretary is hereby instructed to prepare examinations to establish new eligible lists for these classifications as soon as possible."

The position of petitioners is that the board acted arbitrarily and unlawfully in cancelling the promotional eligible list, in that section 395.1 has no application to the selection and appointment of civil service employees in the city of Oakland,

because civil service matters are municipal affairs and therefore beyond the reach of the Legislature. Another way of stating the contention is that the state law cannot supersede the Oakland charter.

There can be no question but that, generally speaking, "Civil service is a municipal affair, and as such the charter of the city and the laws enacted and the rules adopted pursuant thereto govern the rights of the commission, the appointing power and employees." *Higgins* v. *Lynch*, 72 Cal.App. 2d 526 [164 P.2d 943]. See, also, *Dierssen* v. *Civil Service Commission*, 43 Cal.App.2d 53 [110 P.2d 513]. These cases were decided prior to the adoption of section 395.1 and, of course, without any consideration of the question involved here. As civil service generally is a municipal affair and governed by the charter, must the charter provisions yield to the state law in a matter of this kind?

Section 6, article XI, of the state Constitution provides: "Cities and towns hereafter organized under charters framed and adopted by authority of this Constitution are hereby empowered, and cities and towns heretofore organized by authority of this Constitution may amend their charters in the manner authorized by this Constitution so as to become likewise empowered hereunder, to make and enforce all laws and regulations *in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters,* and in respect to other matters they shall be subject to and controlled by general laws." (Emphasis added.)

Section 49(a) of the Oakland charter provides: "The City of Oakland shall have the right and power to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this Charter. . . ."

Section 395.1, Military and Veterans Code, provides: "Notwithstanding any other provision of law to the contrary, any public officer, deputy, assistant, or employee of the State, or of any city, county, city and county, school district, water district, irrigation district, or any other district, political corporation, political subdivision, or governmental agency thereof who, in time of war or national emergency as proclaimed by the President or Congress, leaves or has left his office or position prior to the expiration of the Selective Training and Service Act of 1940 as amended, or any extension thereof, to join the armed forces of the United States and who does or did without unreasonable and unnecessary delay join the

armed forces shall have a right, if released or discharged under conditions other than dishonorable, to return to and reenter upon the office or position within six months after the termination of his active service with the armed forces, if the term for which he was elected or appointed has not ended during his absence.  He shall also have a right to return to and reenter upon the office or position during terminal leave from the armed forces and prior to discharge or release therefrom.

"(b) *Upon such return and reentry* to the office or employment *the officer or employee shall have all of the rights and privileges in, connected with, or arising out of the office or employment which he would have enjoyed if he had not been absent therefrom;* provided, however, such officer or employee shall not be entitled to sick leave, vacation or salary for the period during which he was on leave from such governmental service and in the service of the armed forces of the United States."  (Emphasis added.)

It has been held in a number of instances that where a matter is of state-wide or general public concern a state law may be passed which will control the provisions of municipal charters on the same subject.  In *City of Pasadena* v. *Charleville*, 215 Cal. 384 [10 P.2d 745], the city manager refused to sign a contract for the construction of a wire fence around the municipal waterworks, admittedly a municipal affair, because, among other reasons, the contract did not contain a provision forbidding the employment of aliens upon the work as provided by the Public Works Alien Employment Act of 1931.  There, as here, the petitioner contended that the state law could not bind the city of Pasadena for the reason that the proposed improvement constituted a municipal affair as that phrase is used in section 6 of article XI of the Constitution, and was provided for in the city charter.  The court held (pp. 398, 399-340) : "It remains to determine whether the Alien Labor Law of 1931 is effective and binding on freeholders' charter municipalities in this state.  In other words, is the matter of the employment of aliens on public works one of local concern and a municipal affair or is it such a matter of general public or state concern as that the statute is binding on such freeholder charter cities?  We have concluded that this statute is such an act of sovereignty as to constitute the subject matter thereof of general state concern as distinguished from a local or municipal affair. . . .

"This state has declared and enforced a policy of prohibiting the sale, etc., of agricultural lands in the state to ineli-

gible aliens. That this policy, as a matter of general state concern, would be binding on a freeholders' charter city owning extensive areas of agricultural lands can, we think, admit of no serious doubt. Thus to interfere and prohibit the sale of its agricultural lands would be to control and limit to that extent the disposition of city property, but if the Alien Land Law be expressive of a state policy and in pursuance of a general state concern, the municipality must yield to the paramount authority of the state. . . . Reasons of public policy may well be invoked against the employment of aliens on public work, in addition to the mere preferment of citizens. Assuming that the municipality be in position to raise the constitutional question, it would be of no avail and it may not rightly object to the allocation of its funds to citizens for services rendered on public work if, as we hold, such purpose be a matter of general state policy, as distinguished from a municipal affair.''

The following cases are examples of matters which have been determined to be of state-wide concern and in which general laws have prevailed over conflicting laws in municipalities adopting the ''home rule'' afforded by section 6, article XI of the Constitution: *Ex parte Daniels,* 183 Cal. 636 [192 P. 442, 21 A.L.R. 1172], regulation of traffic on city streets. To the same effect, *Atlas Mixed Mortar Co.* v. *City of Burbank,* 202 Cal. 660 [262 P. 334]; *Mann* v. *Scott,* 180 Cal. 550 [182 P. 281]; *In re Murphy,* 190 Cal. 286 [212 P. 30]; *Pipoly* v. *Benson,* 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515]. Regulation of the character and standards of taxicab service to be performed on city streets, *In re Martinez,* 56 Cal.App.2d 473 [132 P.2d 901]. Appointment of a probation officer and the fixing of his salary payable out of the city and county treasury, pursuant to the Juvenile Court Law, *Nicholl* v. *Koster,* 157 Cal. 416 [108 P. 302]. Sustaining the Metropolitan Water District Act which permits individual municipalities to initiate proceedings in the formation of a water district, *City of Pasadena* v. *Chamberlain,* 204 Cal. 653 [269 P. 630]. Sustaining the City Boundary Line Act, *Gadd* v. *McGuire,* 69 Cal.App. 347 [231 P. 754]. Adoption of a pension system by a municipality does not take the place of the Workmen's Compensation Law in its application to city employees, *Sacramento* v. *Industrial Acc. Com.,* 74 Cal.App. 386 [240 P. 792]. General laws prohibiting the licensing by a city of a house of prostitution, *Farmer* v. *Behmer,* 9 Cal. App. 773 [100 P. 901]. General laws prohibiting the organi-

zation and control of a school district by a county, *Scott* v. *County of San Mateo,* 27 Cal.App. 708 [151 P. 33]. A statute claiming a city street to be a secondary state highway prevails over right of municipality to improve that street, *Southern California Roads Co.* v. *McGuire,* 2 Cal.2d 115 [39 P.2d 412]. Exclusive control in the state of liquor licensing, *Los Angeles Brewing Co.* v. *Los Angeles,* 8 Cal.App.2d 391 [48 P.2d 71]. Issuance and revocation of motor bus licenses within a city, *People* v. *Willert,* 37 Cal.App.2d Supp. 729 [93 P.2d 872]. Drunken driving provision in Motor Vehicle Act prevails over city ordinance, *Helmer* v. *Superior Court,* 48 Cal.App. 140 [191 P. 1001]. Liability of a municipality for tortious acts or omissions of its servants, *Douglass* v. *City of Los Angeles,* 5 Cal.2d 123 [53 P.2d 353]. Liability of a municipality for defective highways within its limits, *Wilkes* v. *City etc. of San Francisco,* 44 Cal.App.2d 393 [112 P.2d 759].

■ It cannot be disputed that the matters contained in section 395.1 of the Military and Veterans Code are of general concern and state-wide interest, even of national concern. As stated in section 2 of the act passing section 395.1, ''Nearly 1,000,000 California veterans have been discharged or will be discharged from the armed services of the United States within the next few months. Many of these veterans left positions of public office and employment without a clear understanding of their rights of reinstatement. There is a lack of clarity and uniformity in the various laws governing the rights of such veterans. In order that all such veterans may have a uniform right to reinstatement and may resume their proper places in the civil life of the community at the earliest opportunity, it is necessary that this act take immediate effect.''

The people of California have declared that this is a matter of public policy. Section 3.5 of article XX of the Constitution added at the election held in November, 1944, reads in part as follows: ''Notwithstanding any other provision of this Constitution, the Legislature by general law may provide for . . . the reinstatement in public employment, . . . of public officers and employees who have resigned or who resign their offices or employments to serve or to continue to serve in the armed forces of the United States or in the armed forces of this State. The Legislature may determine the extent to which such provisions shall be given retroactive effect.

''As used in this section, 'public officers and employees' includes all of the following: . . .

"(d) All officers and employees of any county, city and county, city, township, district, political subdivision, authority, commission, board, or other public agency within this State."

Thus, the people of the state have declared this to be a matter of state-wide concern by an amendment to the Constitution, and in so doing, have granted the Legislature the power to enact general laws controlling the subject, *"Notwithstanding any other provision of this Constitution."* (Emphasis added.) This alone would appear to compel a holding that section 395.1 prevails over the "home rule" afforded in municipal affairs by section 6, article XI.

Even disregarding the fact that the people and the Legislature have already declared this to be a matter of state-wide concern, it would seem that the mere fact that so great a number of veterans were returning within so short a period of time, necessitating their assimilation in civil life in an orderly, uniform manner, without undue dispute or conflict, differing in each locality, makes it a matter affected with a public interest and one affecting the general welfare of the state.

In deciding that a grant of leave of absence to a civil officer of the county of Los Angeles for the duration of his active service in the armed forces of the government during the war did not create a vacancy in his office, the court in *McCoy* v. *Board of Supervisors,* 18 Cal.2d 193 [114 P.2d 569], said, after referring to certain acts of the Legislature providing for the granting of leaves of absence for war service to state and county officers and employees (p. 196): "These emergency measures show clearly that it was and is the policy of the legislature to expedite and encourage the enlistment of public employees in the armed forces of the United States, and to insure the restoration of their positions to them upon return to civil life. A study of similar enactments in other jurisdictions, of various soldiers' and sailors' relief acts, and of the trend of judicial decision, reveals a growing recognition of the necessity of protecting those in military or naval service against the loss of civil rights, and of the potency of a national emergency to justify broad and appropriate relief. Not only have state and national legislative bodies been alert to meet the need for special protective measures, but state and federal courts have kept pace and have evinced a firm intention to take a liberal view of these emergency enactments in order that their protective purposes may be fulfilled with-

out undue imposition of constitutional limitations or hindrance through narrow judicial construction. (88 A.L.R., note, p. 1519.)''

*People ex rel. Happell* v. *Sischo,* 23 Cal.2d 478 [144 P.2d 785, 150 A.L.R. 1431], held that the absence of a judge of the superior court from his judicial duties due to his accepting a commission as an officer in the United States Army during the war did not create a vacancy in his office. There the court reviewed many cases showing that the policy expressed in the McCoy case is a general nationwide policy with the exception of but three states. The court says (p. 490) : ''The national policy is designed and intended to promote recruiting—the so-called voluntary enlistment and acceptance of commissions—as well as to expedite administration of the Selective Service Act. To hold section 395 of the Military and Veterans Code unconstitutional in its application to any public employees or officers would be contrary to the national policy.'' (Section 395.1 had not been enacted at that time.) At page 492, the court further states: ''Section 395 of the Military and Veterans Code obviously is designed to, and reasonably should, aid and expedite the recruiting service of the United States. To hold it inapplicable and void as to judges would reasonably tend to discourage them from enlisting or accepting commissions. Upon the conclusion we have reached in holding that section 9 of article VI applies to judicial officers as such but does not operate to curtail the powers vested in the Legislature to grant military leaves of absence to public employees in the armed forces during time of war, even though the latter also hold judicial office, we avoid giving section 9 such effect as might tend to obstruct the recruiting service of the United States, and we sustain the People of this State, acting through the Legislature, in their translation of the national policy into section 395 of the Military and Veterans Code.''

Indicative of the national policy on the rights of returning veterans, it is to be noted that in connection with veterans who were, before their entrance into the armed forces, in the employ of a state or political subdivision thereof, 50 United States Code Annotated Appendix, section 308(b) (c) declares that it is the sense of the Congress that such persons should be restored to the positions which they previously held or to positions of like seniority, and pay.

In a case involving the provisions of the Soldiers' and Sailors' Civil Relief Act, this court in *Johnson* v. *Johnson,* 59

Cal.App.2d 375, at page 389 [139 P.2d 33], adopted the language used in *Boone* v. *Lightner,* 319 U.S. 561 [63 S.Ct. 1223, 87 L.Ed. 1587] : "The·Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation.''

Petitioners claim that the proper interpretation of section 3.5 of article XX of the Constitution limits the words "reinstatement in public employment" merely to a veteran's right to have his old position back, without any right to "have all the rights and privileges in, connected with, or arising out of the office or employment which he would have enjoyed if he had not been absent therefrom'' as provided in section 395.1 of the Military and Veterans Code. In view of the general attitude of the people towards men and women who performed the great patriotic duty of entering the armed services in time of war, and the decisions of the courts liberally interpreting laws concerning the rights and privileges·to be granted them because of such service, such an interpretation would be too narrow and constricted. Just to give a returned veteran the same position he had when he left for war, and refuse to place him as nearly as reasonably and feasibly possible in the position he would now be in had he not gone into the armed forces, would be a poor recognition of and reward for the sacrifice he had made for his country. When the public servant returns from service in the armed forces to his former position, under the spirit of the Constitution, the act of the Legislature, the decisions of the courts, and above all, the desires of a grateful citizenry, he is entitled to an immediate opportunity to take an examination to make him eligible for the promotion he would have received had he not left the public service and had he passed the required examination.

As hereinbefore shown, the reinstatement in public employment of returning veterans is a matter of general public concern, and being such, the general laws control the ''home rule'' provisions of municipal charters. Therefore, it becomes unnecessary to consider the effect of section 76 of the Oakland charter which, in effect, gives the board the right to cancel the eligibility lists at any time. Nor is it necessary to consider another point raised by respondents, namely, that mandamus will not lie here, because the board had the discretion of choosing one of two methods in meeting the situation. One was to cancel the existing eligibility list and call for a new examination of all eligible persons, including the returned

veterans. This was the procedure followed in this instance. The other method would be to give an examination to returning veterans, and combine the resulting eligibility list with the existing list.

The alternative writ is discharged and the application for a peremptory writ is denied.

Peters, P. J., and Ward, J., concurred.