CONLEY, P. J.
I dissent. The majority opinion, contrary to the Constitution and statutes of the state, takes away the sole right of the Industrial Accident Commission to decide whether an employee of the city was disabled in the course of his employment and gives to a municipal pension board the power to override a finding of the state body on that subject. It seems to establish the propriety of directly opposite conclusions of a state commission and a city board on a common subject as to which the state commission was given jurisdiction by the Constitution and statutes and, apparently, opens the way logically to future raids on public treasuries.
In 1960, James O. Pathe, who had been an employee in the fire department of the City of Bakersfield for over 10 years, *418 became conscious of an adverse heart condition. On March 13 of that year, he applied to the Industrial Accident Commission, now the Workmen’s Compensation Appeals Board, for benefits under the compensation system enacted by the Legislature for employees who suffered disease or injury in the course of their employment. On August 18, 1961, the commission issued “Findings and Award” in his case (No. 60 BA 1770) including Finding No. 2 reading as follows: “Said employee did not sustain an injury arising out of and occurring in the course of employment,” and denied recovery, except for medico-legal costs of $50. In the meantime, the Bakersfield Pension Board of The Relief and Pension Fund for Members of the Fire Department took independent action. This fund is administered, under the city charter, by a board of trustees of which the majority of its members are employees of the fire department; the personnel of the pension board consists of the mayor, city manager, city treasurer, chief of the fire department, and three other members elected by the fire department. (Charter of the City of Bakersfield, § 165; Stats. 1915, Assembly Concurrent Resolution Number 3, p. 1552, as subsequently amended.)
Section (168) 4 of the city charter reads as follows: “Whenever any member of the Fire Department shall become disabled by reason of bodily injuries received in or by reason of sickness caused by the discharge of the duties of such member in such Department and such disability shall continue for one (1) year or shall become so physically or mentally disabled as a result of such injuries or sickness as to render his retirement from active service necessary, the Pension Board shall order and direct that such member be retired from active service 'and, thereafter, such member so retired shall, during his lifetime, be paid from said pension fund, in equal monthly installments, the retirement allowance as provided in Section 13. Provided, however, that any such retirement allowance shall cease when the member’s disability ceases and, in such event, such member shall be restored to the same rank or position which he held at the time of retirement. Provided, further, that the Pension Board shall have the power and authority to hear and determine all matters pertaining to the granting and termination of any such retirement allowance. Said Board shall make its findings in writing, based upon the report or reports of at least three regularly licensed, practicing physicians, and such other evidence concerning such disability as shall be presented to it. One of such physicians shall be the Health Officer of the City of Bakersfield, one shall be *419 selected by the member applying for such retirement allowance and at least one shall be selected by said Pension Board. ’ ’
In the month of July 1961, without waiting for a ruling by the Industrial Accident Commission, on Mr. Pathe’s application to that organization, as hereinbefore stated, the pension board purportedly made an order that Pathe’s disability was contracted in and by reason of the discharge of his duties as a fireman and retired him from active service on a service-connected disability. In this connection, the record does not show that Mr. Pathe ever made application to the pension board for a service-connected disability; there is no record in the minutes of the board of the holding of any formal proceeding to retire Mr. Pathe on a service-connected disability; while it was the usual custom of the board on any matter before it to vote and to enter the result in the minutes, there are no minutes in this instance; there were no written findings as to whether the disability was service-connected, as required by the city charter; there were reports from three doctors relative to the physical condition of Mr. Pathe, but none of them indicated that his heart condition was service-connected, and in fact it is conceded that the doctors were not even asked to give their opinion on the question of service connection of his heart condition, but that they only were requested to give their opinions as to whether he was capable of continuing his active duties as a fireman; there was evidence before the trial court that in the “discussion” by the pension board members the board took no evidence on the subject but only considered as applicable the presumption set forth in section 3212 of the Labor Code relative to heart conditions of firemen and that such presumption was the only “evidence” before the board at its informal meeting to support its conclusion that Pathe was entitled to a service-connected pension during retirement.
Almost two years after the Industrial Accident Commission had ruled specifically that the heart condition of Mr. Pathe was not service-connected, the city attorney advised the pension board that in his opinion it could not pay Mr. Pathe the greater pension on a service-connected basis but only the smaller monthly sum which was due to every retired employee of the fire department if his illness was not service-connected. This modification was made without a formal hearing in the month of March 1963. It was not until March 7, 1966, almost five years after the ruling of the Industrial Accident Commis *420 sion, that this petition for a writ of mandate was filed against the City of Bakersfield and its pension hoard; the petition in this proceeding demanded that a writ of mandate issue ordering the pension board to restore the benefits to Pathe that he would have received as the result of a service-connected disability.
The demurrer of the respondents below was overruled and an answer was filed by them. The trial court, after hearing testimony issued a memorandum opinion in favor of the petitioner; findings and a judgment were entered and a writ of mandate ordered, directing the board to pay a greater pension each month in accordance with the theory that the disability was service-connected. Thus, the principal question on appeal is whether in the circumstances of this ease the Industrial Accident Commission had superior authority to decide if Mr. Pathe’s disability was service-connected.
At this point, a necessary distinction should be kept in mind between the situation which is considered in cases such as Flaherty v. Board of Retirement, 198 Cal.App.2d 397, 402-406 [18 Cal.Rptr. 256]. in which by legislative enactment an entity independent of the employer was given jurisdiction to determine whether an employee was entitled to service-connected retirement benefits irrespective of the holding on that question by the Industrial Accident Commission, in which event a finding on the subject by the Industrial Accident Commission is not binding on the other entity, and the situation here present in which the city and the employee are concededly subject to a determination of the question by the state commission. In the instant case, there is no question but that Mr. Pathe was an employee of the City of Bakersfield, or that the city as employer, and hence the pension board as an agency of the city, were subject to the jurisdiction of the Industrial Accident Commission. In such circumstances, the case of French v. Rishell, 40 Cal.2d 477 [254 P.2d 26], points out that the doctrine of res judicata is applicable when the city employer of the sick or injured employee is a party to a proceeding before the Industrial Accident Commission and that the principle applies to a subsequent ruling of the city’s pension board, even though the pension board, as such, was not a party to the proceeding before the Industrial Accident Commission, saying at page 482: “Under the city charter, the pension board acts as an agent of the city, and, in this representative capacity, it is bound by the commission’s decision if the city is bound. [Citing cases.]” This, then, is the sitúa *421 tion—Bakersfield is the employer; Mr. Pathe is the employee; the local pension board is an agent of the city and is bound, just as the city is, by the action of the Industrial Accident Commission. In these circumstances, it would seem that the Industrial Accident Commission has full overriding power to determine whether the employee was injured in the course of his employment. Section (179) 15 of the Bakersfield City Charter provides that preceding sections of the charter “. . . shall in no way alter, modify, change, or abrogate any of the terms, conditions or provisions of that certain act of the legislature known and referred to as the Workmen’s Compensation, Insurance and Safety Act or any amendments thereto.”
Section 21 of article XX of the California Constitution provides in part as follows: “The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen’s compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for injury or disability, and their dependents for death incurred or sustained by the said workmen in the course of their employment, irrespective of the fault of any party. A complete system of workmen’s compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workmen and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workmen in the course of their employment, irrespective of the fault of any party; also full provision for securing safety in places of employment; full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury; full provision for adequate insurance coverage against liability to pay or furnish eomnensation; full provision for regulating such insurance coverage in all its aspects including the establishment and management of a State Compensation Insurance Fund; full provision for otherwise securing the payment of compensation ; and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incum *422 brance of any character; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State Government. ’ ’
Pursuant to the constitutional provision, the Legislature passed a comprehensive Workmen’s Compensation Act, now incorporated, as amended, in division IV of the Labor Code.
In Healy v. Industrial Acc. Com., 41 Cal.2d 118, 122 [258 P.2d 1], it is said: “If, however, there is any conflict between charter provisions and the compensation sections of the Labor Code, the latter must prevail. Under power expressly granted to it by the Constitution, the Legislature has established a complete system of workmen’s compensation which obviously is a subject of state-wide concern, and it is well settled that in such matters the general law is paramount. ’ ’
In the earlier case of Eastlick v. City of Los Angeles, 29 Cal.2d 661, it is said at page 665 [177 P.2d 558, 170 A.L.R. 225] : “. . .a city, by adopting a charter, becomes independent of general laws only as to ‘municipal affairs,’ and ... in matters of general statewide concern the general law is paramount . . . .” (See also Lowman v. Stafford, 226 Cal.App.2d 31, 36-39 [37 Cal.Rptr. 681] ; Loustalot v. Superior Court, 30 Cal.2d 905 [186 P.2d 673] ; Buttner v. American Bell Tel. Co., 41 Cal.App.2d 581, 583-584 [107 P.2d 439] ; Fitzpatrick v. Fidelity & Cas. Co., 7 Cal.2d 230, 233 [60 P.2d 276] ; Sacramento v. Industrial Acc. Com., 74 Cal.App. 386, 394-396 [240 P. 792]; Hawthorn v. City of Beverly Hills, 111 Cal.App.2d 723, 727-731 [245 P.2d 352] ; 1 Hanna, California Law of Employee Injuries and Workmen’s Compensation (2d Ed.), §§ 3.08 [2] [a]; 3.06 [1] ; 3.08 [2][b].)
No court, except the Supreme Court and the Courts of Appeal, has power to review, reverse, correct or annul any order of the Industrial Accident Commission (Lab. Code, § 5955; 1 Hanna, California Law of Employee Injuries and Workmen’s Compensation (2d Ed.), § 3.06 [3]; Loustalot v. Superior Court, supra, 30 Cal.2d 905). And it would seem to follow that in the circumstances shown by this case, the ruling of the Industrial Accident Commission should take precedence over any contrary decision by a city pension board on the same point, and that the pension board is without right to make a finding directly opposed to that of the Industrial Accident Commission on the question of whether the illness of Mr. Pathe was service-connected. In passing, it must be noted that the trial court fell into error by adopting the statement of counsel for the respondent that the provision found in section (166) 2(y) of the charter, “. . . The decision of such *423 Disability and Retirement Board in such eases shall be final and conclusive, ’ ’ applied to any decision of the board, whereas a simple reading of the section shows that it refers only to a definition of the word Widow.
It should be observed also that even if the Industrial Accident Commission did not have a superior right to decide this question, and the jurisdiction of the two bodies had been concurrent and equally weighty, the Industrial Accident Commission would have had a superior right to decide this question because Mr. Pathe conferred jurisdiction to the Industrial Accident Commission by filing therein an application for compensation approximately one year prior to the ruling of the local pension board. In Scott v. Industrial Acc. Com., 46 Cal.2d 76, 81 [293 P.2d 18], the general rule is thus stated: . . When two or more tribunals in this state have concurrent jurisdiction, the tribunal first assuming jurisdiction retains it to the exclusion of all other tribunals in which the action might have been initiated. Thereafter another tribunal, although it might orginally have taken jurisdiction, may be restrained by prohibition if it attempts to proceed. [Authorities cited.] One reason for the rule is to avoid unseemly conflict between courts that might arise if they were free to make contradictory decisions or awards at the same time or relating to the same controversy; another reason is to protect litigants from the expense and harassment of multiple litigation. [Authorities cited.]” Entirely apart from the controlling right of the Industrial Accident Commission to pass on the question at issue here, the proof received by the pension board did not justify the action taken by it under the provisions of the Bakersfield City Charter.
Section (177) 13 of the charter referred to in Section 168 (4) quoted above provides for two different pension rates for retired firemen as follows: 1 ‘ Upon retirement for disability as provided in Subsection (a) of this section, a member,
“(a) If his disability shall be determined by the Retirement Board to be the result of injury or illness incurred in the performance of duty, shall receive
“ (1) An annuity which shall be the actuarial equivalent of his accumulated contributions, excluding his accumulated dependent contributions, unless he shall exercise his option as provided in Section 11, subsection (d), at the time of his retirement; and
“(2) A pension which, when added to the annuity purchased by his accumulated normal contributions, shall be *424 equal to a monthly retirement allowance of one-half (1-2) of his final compensation.
“ (b) If his disability shall be determined by the Retirement Board to be not the result of injury or illness incurred in the performance of duty, shall receive
11 (1) An annuity which shall be the actuarial equivalent of his accumulated contributions, excluding his accumulated dependent contributions, unless he shall exercise his option as provided in Section 11, subsection (d), at the time of his retirement; and
“ (2) A pension which, when added to the annuity purchased by his accumulated normal contributions, shall make his retirement allowance equal to: one and one-quarter (1%) per centum of his final compensation multiplied by the number of years credited to him, provided such allowance is at least one-fourth (%) of his final compensation; or one and one-quarter (1%) per centum of his final compensation multiplied by the number of years of service credited to him were his service to continue until his attainment of the age of fifty-five (55) years, provided such retirement allowance shall not exceed one-fourth (%) of such final compensation.
“ (e) Upon the death of a member who has been retired by reason of disability as a result of injury or illness incurred in the performance of duty, the retirement allowance shall be continued to his widow to whom he was married at least one (1) year prior to his retirement throughout her life or until she remarries. Upon the death of a member who has been retired by reason of disability which is not the result of injury or illness incurred in the performance of duty, two-thirds (%) of the retirement allowance shall be continued to his widow to whom he was married at least one (1) year prior to his retirement and who is of the same age as said member throughout her life or until she remarries. If such widow is of a different age than said member, then the retirement allowance which shall be so continued to her shall be the actuarial equivalent of the retirement allowance which would have been continued to her had she been the same age as said member. If there be no such widow or if any such widow shall die, then the allowance which would have been paid to her had she survived such member and been eligible therefor or had she continued to live, shall be paid to the legally appointed guardian of the child or children of such deceased member until such child or children shall die or shall have attained the age of eighteen (18) years. If payment of the allowance shall terminate by reason of the remarriage of the widow or the *425 attainment of the age of eighteen (18) years by such child or children before the total of the monthly payments made shall equal the sum of the member’s contributions, with interest thereon, as of the date of his retirement, then an amount equal to the difference between said total and said sum shall be paid in one amount to his remarried widow or, if there be no such widow, to his child or children; provided, however, that such amount shall not be paid to any widow who was not married to such member at least one (1) year prior to his retirement. ’'
The evidence received by the trial court did not indicate an opinion of any doctor that Mr. Pathe’s heart condition was service-connected. The record in this respect is most illuminating. Mr. Paul Adams, the assistant secretary of the board, testified:
“Q. Does the record indicate the Board made any findings in writing ?
A. There are no references in the minutes. I don’t understand why.
Q. Is there anything in the record at all making a finding of a service connected disability?
A. Not to my knowledge.
Q. And in this particular instance, there’s nothing entered into the minutes representing whether or not Mr. Pathe’s disability was service connected or not, is that correct ?
A. I have not been able to find any reference in the minutes to that effect. ’ ’
Mr. Adams earlier had testified:
“Q. Now I believe you stated that the Pension Board did have the reports of three doctors and that those doctors did not make any finding as to whether Mr. Pathe’s heart condition was service connected or not. Is that correct ?
A. That’s correct. They were not requested to make such a finding. They were requested only to determine whether or not Pathe could continue as a fireman. ’ ’
At page 14 of the reporter’s transcript the same witness testified:
“Q. You said there was a discussion of the Board and they made a finding that it was job connected.
A. Yes, sir.
Q. This was based upon three doctors’ reports?
A. No, sir. It was not. It was not based—the doctors’ reports *426 didn’t stipulate in any manner as to whether the disability was job incurred.”
John McAteer, another fireman member of the board, testified:
“Q. Did any of those doctors, any one of those three doctors, in their reports indicate in any way whether the case was job incurred or not?
A. They did not. ’ ’
Instead of relying on required medical opinions of doctors and finding accordingly, the board relied on the presumption set forth in section 3212 of the Labor Code that a fireman with heart trouble had sustained it in the course of his employment; however, the Supreme Court has recently said that such a presumption is not evidence which is effective in a proceeding before any organization except the Industrial Accident Commission itself (French v. Rishell, supra, 40 Cal. 2d 477, 480-481).
Thus, the pension board not only did not have any medical opinion on the question whether the heart trouble was service-connected, but no legitimate evidence of any kind to justify such a conclusion. And its failure to make written findings as required by the city charter was fatal to an award of a service-connected pension. Apart from all other questions, it would seem that the mode was the measure of the power. (Glass v. Ashbury, 49 Cal. 571; Cowell v. Martin, 43 Cal. 605; Whitmore v. Brown, 207 Cal. 473, 481 [279 P. 447] ; Zottman v. San Francisco, 20 Cal. 96 [81 Am.Dec. 96].) It thus appears that there was no legitimate basis for the issuance of the writ of mandate and that the judgment should be reversed, even if we were to assume that the local pension board had jurisdiction to pass on the question whether Mr. Pathe’s illness was service-connected.
I would reverse the judgment and direct the trial court to adopt new findings and a new judgment not inconsistent with the foregoing dissenting opinion.
A petition for a rehearing was denied November 22, 1967. Conley, P. J., was of the opinion that the petition should be granted. The petition of the appellant city for a hearing by the Supreme Court was denied December 20, 1967.