[Civ. No. 16799. Second Dist., Div. One. July 29, 1949.]

STANLEY H. PALASKE, Respondent, v. CITY OF LONG BEACH et al., Appellants.

Irving M. Smith, City Attorney, Nowland M. Reid, Assistant City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Appellants.

Joseph A. Ball and Kenneth Sperry for Respondent.

WHITE, P. J.—The city of Long Beach and certain of its officials have appealed from a judgment of the Superior Court of Los Angeles County granting to petitioner and respondent, a policeman of said city, a writ of mandate requiring the city to pay him an annual pension equal to 50 per cent of his annual salary plus 1-2/3 per cent of his annual salary for each year of service over an aggregate of 20 years.

Petitioner entered the Long Beach Police Department on April 1, 1925, and served continuously until March 12, 1942, when he entered the armed forces. On July 1, 1945, he was discharged from the United States Navy and was "reinstated" to his former position of patrolman in the police department. On July 10, 1947, he applied for a retirement pension pur-

suant to the provisions of section 187 of the Charter of the City of Long Beach (Stats. 1931, p. 2785). On August 19, 1947, his application was denied by the city council on the ground that he had not served 20 years "in the aggregate" as a member of the police department. It is admitted in the briefs that subsequent to the entry of judgment herein petitioner completed 20 years' aggregate service exclusive of the period of his absence in military service and has been granted a pension of 50 per cent of his annual salary. The question of whether such period of absence in the armed forces should be included in computing petitioner's aggregate service in the police department is not moot, however, for reasons that hereafter appear.

 Petitioner sought his pension pursuant to the provisions of subdivision 2 of section 187 of the Charter of the City of Long Beach (Stats. 1931, p. 2785), which provided that any member of the fire or police departments who should have served 30 years might be retired on a pension equal to two-thirds of the annual salary attached to the rank or position held by him one year prior to the date of retirement, and which further provided:

". . . that after twenty years' aggregate service, . . . such person shall be retired and paid in equal monthly installments from said fund a limited pension as follows: for twenty years' service, fifty per cent (50%) of the annual salary . . . and an additional one and two-thirds per cent (1-2/3%) of such salary for each year over twenty years and less than thirty years in the aggregate served by such member before retirement."

By an amendment to the city charter effective March 29, 1945 (Stats. 1945, p. 2954 § 187.1), section 187 was repealed with a saving clause applicable only to those who had served 20 years prior to the effective date of the amendment. This section 187.1 provided:

"Sections 187 and 188 of this Charter are hereby repealed; provided, however, that any member of the Fire or Police Department who shall have served in such department for twenty (20) years or more on the effective date of this amendment shall be entitled to retire at any time within five (5) years from said effective date as provided by subdivision (2) of said Section 187, and, beginning with the date of his retirement, shall be paid a pension of such percentage of his salary as he would have been entitled to receive had he been retired on the effective date of this amendment."

On the effective date of this amendment petitioner lacked two days of completing 20 years' service in the police department, even including the period during which he was absent in the Navy. His situation was therefore the same as that of the petitioner in *Kern* v. *City of Long Beach,* 29 Cal. 2d 848 [179 P.2d 799], where it was held that "petitioner has a vested pension right and that respondent city, by completely repealing all pension provisions, has attempted to impair its contractual obligations. This it may not constitutionally do, and therefore the repeal is ineffective as to petitioner."

Appellants first urge that the court erred in holding that the time respondent served in the armed forces constituted a part of his aggregate service as a patrolman with the city. If the time served in the armed forces is included as part of respondent's aggregate service, then on the date of his retirement, July 10, 1947, his aggregate service would be a little over 22 years, and the second question then arises, whether he is entitled to the additional sum of 1-2/3 per cent of a patrolman's annual salary for each year of service in excess of 20 years.

We have concluded that the trial court properly held that respondent was entitled to credit for the time served by him in the armed forces. Section 3.5 of article XX of the Constitution of this state provides:

"Notwithstanding any other provision of this Constitution, the Legislature by general law may provide for the reinstatement and reentry into public office within the terms for which they were elected, and the reinstatement in public employment, respectively, of public officers and employees who have resigned or who resign their offices or employments to serve or to continue to serve in the armed forces of the United States or in the armed forces of this State."

Pursuant to this constitutional authority, the Legislature enacted subdivision (c) of section 395.1 of the Military and Veterans Code, providing, so far as here pertinent, as follows:

"Any officer or employee other than a probationer who is restored to his office or employment pursuant to this act shall not be discharged from such office or position without cause within one year after such restoration, *and shall be entitled to participate in insurance or other benefits offered by the employing governmental agency pursuant to established rules and practices relating to such officers or em-*

*ployees on furlough or leave of absence in effect at the time
such officer or employee left his office or position to join the
armed forces of the United States."* (Emphasis added.)

Appellants argue that in using the phrase "insurance or
other benefits" the Legislature did not intend to include
pension rights; that a pension is an integral part of the
salary and contract of employment of an employee (*Kern* v.
*City of Long Beach, supra; Dryden* v. *Board of Pension Com-
missioners,* 6 Cal.2d 575 [59 P.2d 104]); that the Legislature
is without power to provide for or determine the pay of em-
ployees of a chartered city, even under the authority granted
by section 3.5 of article XX, above quoted. It is urged that
while the Legislature, in proper circumstances, may declare
a particular matter to be of statewide concern and pass laws
which supersede the power of a municipality to legislate in
connection therewith, it is "without power to leave a matter
subject to municipal control and then enact legislation in
effect amending a Charter provision and extending to per-
sons benefits not contemplated by the Charter." Further,
contend appellants, even if the term "other benefits" in-
cludes pensions, there was no proof that the city had estab-
lished "rules and practices" granting any pension benefits.

Appellants' contentions must be rejected. As was said
in *Cunningham* v. *Hart,* 80 Cal.App.2d 902, 908 [183 P.2d
75], "the people of the state have declared this" (the rein-
statement of veterans in public office and employment) "to
be a matter of state-wide concern by an amendment to the
Constitution, and in so doing, have granted the Legislature
the power to enact general laws controlling the subject, *'Not-
withstanding any other provision of this Constitution.'* (Em-
phasis added.) This alone would appear to compel a holding
that section 395.1 prevails over the 'home rule' afforded in
municipal affairs by section 6, article XI." Further, as was
held in the cited case, "Even disregarding the fact that the
people and the Legislature have already declared this to be
a matter of state-wide concern, it would seem that the mere
fact that so great a number of veterans were returning within
so short a period of time, necessitating their assimilation in
civil life in an orderly, uniform manner, without undue dis-
pute or conflict, differing in each locality, makes it a matter
affected with a public interest and one affecting the general
welfare of the state."

The contention that the phrase "and other benefits"
should not be construed to include pensions or pension rights

is directly contrary to the national and state policy as disclosed by the various enactments for the relief of those who have been obliged to drop their own affairs to take up the burden of the nation, as well as the oft-announced intention of state and federal courts to take a liberal view of such enactments. (*Cunningham* v. *Hart, supra,* p. 908, 909, 910; *People ex rel. Happell* v. *Sischo,* 23 Cal.2d 478 [144 P.2d 785, 150 A.L.R. 1431] ; *Boone* v. *Lightner,* 319 U.S. 561 [63 S.Ct. 1223, 87 L.Ed. 1587] ; *Fishgold* v. *Sullivan Drydock & Repair Corp.,* 328 U.S. 275 [66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110] ; *Johnson* v. *Johnson,* 59 Cal.App.2d 375, 379 [139 P.2d 33].) In *McCoy* v. *Board of Supervisors,* 18 Cal.2d 193 [114 P.2d 569], the court said: ''. . . A study of similar enactments in other jurisdictions, of various soldiers' and sailors' relief acts, and of the trend of judicial decision, reveals a growing recognition of the necessity of protecting those in military or naval service against the loss of civil rights, and of the potency of a national emergency to justify broad and appropriate relief. Not only have state and national legislative bodies been alert to meet the need for special protective measures, but state and federal courts have kept pace and have evinced a firm intention to take a liberal view of these emergency enactments in order that their protective purposes may be fulfilled without undue imposition of constitutional limitations or hindrance through narrow judicial construction.''

In *Fishgold* v. *Sullivan Drydock & Repair Corp., supra,* the Supreme Court of the United States was considering an act of Congress very similar to section 395.1 of the Military and Veterans Code of this state. The court said:

''The Act was designed to protect the veteran in several ways. He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. He was, moreover, to gain by his service for his country an advantage which the law withheld from those who stayed behind. . . . He shall 'be restored without loss of seniority' and be considered 'as having been on furlough or leave of absence' during the period of his service for his country, with all of the insurance and other benefits accruing to employees on furlough or leave of absence. § 8(c). Thus, he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war.

"This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need.

"As we have said, these provisions guarantee the veteran against loss of position or loss of seniority by reason of his absence. He acquires not only the same seniority he had; *his service in the armed forces is counted as service in the plant so that he does not lose ground by reason of his absence.*" (Emphasis added.)

▮ We are in accord with the statement of counsel for respondent that the word "benefit" is a generic term which includes all contractual rewards which the employer owes to the employee through established rule and practice. In *Maclaughlin* v. *Union Switch & Signal Co.*, 166 F.2d 46, 48, the question involved was one of vacation rights. The court there said, in part: ". . . Vacation advantages accorded employees are certainly no less to be prized than such *benefits* as *pensions,* bonuses and participation in insurance programs. . . ." (Emphasis added.) In another vacation case, *Mentzel* v. *Diamond,* 167 F.2d 299, 300, it was said, with respect to the returning veteran, "He is protected, while away, to the same extent as if he had been either continuously on the job in the plant or away on furlough or leave of absence for some personal reason."

▮ Respondent in his petition alleged that at the time he was called for service in the armed forces the Board of Police and Fire Pension Commissioners of the city had adopted the practice of permitting officers and employees of the police and fire departments to receive credit for the time spent by them on furlough or leave of absence toward the time necessary to entitle them to receive a retirement pension. The trial court found this allegation to be true, and it is urged that such finding is without support in the evidence. This contention may not be sustained. At the trial it was stipulated, in substance, that from July, 1939, to March 29, 1945, it had been the custom of the pension commissioners of the city to submit all legal questions concerning the pension provisions of the city charter and all doubtful pension claims to the city attorney for an opinion, and it was customary for the pension commissioners to follow such opinion; that no formal rules or regulations with respect to granting or denying pension claims had ever been adopted.

Copies of minutes of the pension board and of the opinions of the city attorney were introduced in evidence, from which

records it appeared that pursuant to opinions rendered by the city attorney from time to time, the board had granted the retirement applications of several members of the police and fire departments who had not completed 20 years of service exclusive of time spent on leave of absence. For example, on April 1, 1941, a pension was granted to Alonzo White, who had been a member of the police department since February 21, 1921, but who had been on leave of absence since November 25, 1940. The city attorney in his opinion concluded that "neither vacations nor sick-leaves during which the member receives compensation, nor leaves of absence granted upon the recommendation of the head of his Department and City Manager, on order of the City Council, as provided in Section 47, during which the member receives no compensation, were intended to be eliminated in computing the length of service." The city attorney took the view that the term "aggregate service" was intended "to cover cases where there was such an interruption of service, as where there was a retirement for disability . . . or where the member of the Department had resigned and was afterward re-employed."

The same procedure was adopted and the same ruling made in the case of Mrs. Lulu Straw, who applied for and received a pension effective October 9, 1941. Mrs. Straw had been "off duty" during her period of service a total of 197 days, mostly "sick without pay." A similar ruling was made in the case of a patrolman who had had one month's leave of absence and one 10-day suspension, as well as in three other like cases.

It was further stipulated that neither the minutes of the Board of Police and Fire Pension Commissioners since July, 1939, and prior to March 29, 1945, nor the minutes of the city council since that date, disclosed any case in which a pension was denied by reason of a portion of the applicant's aggregate service having been spent on an extended leave of absence granted by the city council under the provisions of section 47 of the charter; and further that it does not appear from the minutes or records that either the board or the city council "has failed to take into consideration, as a part of the aggregate service . . . the periods during which they were absent from active duty on account of sickness where sick leave had been granted pursuant to the provisions of the so-called Sick Leave Ordinances of the City of Long Beach, or where such members were absent on vacations pursuant to

the provisions of the so-called Vacation Ordinance of Long Beach.''

Appellants submit that the action of the board of pension commissioners, as disclosed by its minutes, based upon the advice of the city attorney, does not constitute the adoption of a rule or establishment of a practice; that the board could not establish a rule or practice which would grant any rights which were not granted by section 187 of the charter. The city attorney, it is urged, in his opinions was interpreting section 47 of the charter, which authorized the city council to grant a leave of absence, not exceeding one year, for the purpose of health, or study, travel and research, to any employee of the city, other than elective officers and the city manager.

We consider the foregoing evidence ample to support a finding that there existed at the time respondent entered the armed forces an established rule or practice on the part of those administering the pension program to include leaves of absence in computing ''aggregate'' service. While there was no formal adoption of a rule, there was certainly shown to exist an ''established'' practice. The opinion of the city attorney was followed in the case of Alonzo White in 1941 and consistently adhered to thereafter. Under its charter authority to administer the pension system, the board had the right and the duty to establish rules and practices not inconsistent with the charter provisions. It was necessary for the board to determine the meaning of the phrase ''aggregate service.'' This it did, acting upon the advice of the city attorney. Its contemporaneous construction of the law it was charged with administering, while not controlling upon the courts, is entitled to great weight, particularly when long acquiesced in. (23 Cal.Jur. 775; *Koenig* v. *Johnson,* 71 Cal.App.2d 739, 755 [163 P.2d 746].) The policy adopted by it amounted to a ''departmental rule of action.'' (See *Tyra* v. *Board of Police etc. Commissioners,* 32 Cal.2d 666, 670 [197 P.2d 710].)

The contention that the policy adopted can apply only to ''authorized'' leaves of absence under section 47 of the charter begs the question. Under subdivision (c) of section 395.1 of the Military and Veterans Code hereinbefore quoted, the employee was entitled to participate in benefits offered pursuant to established rules and practices relating

to employees "on furlough or leave of absence" in effect at the time he entered the armed forces. It is of no moment that a furlough or leave of absence was not granted by the department head or city council. The effect of the code section was to place the employee in the *status* of one on furlough or leave of absence so far as his right to participate in "insurance or other benefits" is concerned.

It should further be noted that in 1941 the electors of Long Beach adopted section 101.5 of the charter, evincing their policy toward the returning veteran by providing that "all persons in the classified service who on or after June 1, 1940, shall have entered, or who hereafter shall enter, the armed forces . . . shall be reinstated without loss of *status* or seniority . . . (Emphasis added.)

Recognizing the complexity of the problems that can arise in the administration of pension systems of various types, we deem it advisable to point out that the holding in the case now before us is limited to the particular facts here presented—that is, that where by law or by an established rule or practice of the administrators of a pension system, time spent on leave of absence or furlough is included in computing the time required to be served in order to qualify for retirement on pension, then the returning veteran is entitled to have the time spent by him in the armed forces included in the computation of his length of service for the purpose of qualifying for such pension, the same as if he had been on an ordinary furlough or leave of absence. We further hold that such an "established rule or practice" was shown to exist in the case at bar. Problems which may arise in the administration of other systems (including the question of contributions) and the rights of the veteran thereunder, with the many questions which may be raised through the necessity of maintaining a sound actuarial basis and preserving the integrity of a fund, are not now before us. We recognize, as appears from the following quotation, that "The rule permitting modification of pensions is a necessary one since pension systems must be kept flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system and carry out the beneficent policy." (*Kern* v. *City of Long Beach, supra,* p. 854.)

We are now met with the question raised by the fact that although by the amendment to the charter of March 29, 1945, the city repealed all pension provisions as to per-

sons not then eligible for retirement, the repealing section contained a proviso that any person who had completed 20 years or more service on the effective date should be entitled to retire at any time within five years and receive the pension to which he would be entitled had he retired on the effective date of the amendment. In other words, one who had served 20 years on the effective date would be entitled to a pension of 50 per cent of his salary and no more, and could not by continuing in his employment earn an increase of 1-2/3 per cent for each year of service over 20 years.

As heretofore noted, the respondent herein is in the same position as the petitioner in *Kern* v. *City of Long Beach, supra,* in that he had not completed the minimum of 20 years' service upon the effective date of the repeal. The attempt to completely repeal all pension provisions as to persons with less than 20 years' service was held unconstitutional in the Kern case, the court there saying: "Accordingly, we conclude that petitioner has a vested pension right and that respondent city, by completely repealing all pension provisions, has attempted to impair its contractual obligations. This it may not constitutionally do, and therefore the repeal is ineffective as to petitioner."

The question of the validity of that portion of the amendment which limited the amount of pension which an employee with 20 years or more service on the effective date could receive to the amount to which he would be entitled if he retired on the effective date, was not before the court in the Kern case. The language of the court in that case, however, justifies the implication that such a limitation is valid. In considering the contractual rights of an employee whose right to a pension has not vested (that is, vested in the sense that the contingency upon which it becomes payable has arrived), the court said:

"Thus it appears, when the cases are considered together, that an employee may acquire a vested contractual right to a pension but that this right is not rigidly fixed by the specific terms of the legislation in effect during any particular period in which he serves. The statutory language is subject to the implied qualification that the governing body may make modifications and changes in the system. The employee does not have a right to any fixed or definite benefits, but only to a substantial or reasonable pension. There is no inconsistency therefore in holding that he has a vested right

to a pension but that the amount, terms and conditions of the benefits may be altered.''

Illustrative of the kind of modification that will be upheld, the court said:

"The kind of modification that has been upheld is illustrated by *Brophy* v. *Employees Retirement System*, 71 Cal. App.2d 455 [162 P.2d 939], where the court sustained an amendment, made before the time for retirement, reducing the monthly amount to be paid to retired employees engaged in gainful occupations. It has also been held that a pension could be reduced prior to retirement from two-thirds to one-half of the employee's salary, and modifications have been approved in some cases when made after the happening of the contingencies upon which the payments were to commence." (Citing cases.)

As heretofore stated, the court did not go into the effect of the modification here under discussion, but said: "The permissible scope of changes in the provisions need not be considered here, because the respondent city, with a minor exception, has repealed all pension provisions.''

■ Applying the principles set forth in *Kern* v. *City of Long Beach, supra,* it appears that it was within the power of the city to modify its pension plan to provide that on and after the effective date of the amendment an employee who was entitled to retire might do so or not, as he saw fit, but that if he chose to continue as an employee he could not thereby earn any additional pension above that to which he was entitled on the effective date of the amendment. As stated by the Supreme Court, the employee has a vested right only to a substantial or reasonable pension. His contractual right to such a pension has not been impaired by legislation which, operating prospectively, merely withdraws any right or option to earn a bonus by continuing in employment after he has become eligible for retirement.

■ A further difficulty is presented, however, by reason of the fact that the modification in question, by its terms, was not made applicable to one who, like respondent here, was not eligible to retire on the effective date of the amendment. As to him, and others in like situation, all pension provisions were repealed. As to him, the repeal was "ineffective." (*Kern* v. *City of Long Beach, supra,* p. 856.) Respondent contends that since the repeal was ineffective as to him, he is entitled to all the benefits provided by section 187 of the charter prior to its repeal, and that he has a contractual

right to a pension of 50 per cent of his annual salary plus 1-2/3 per cent for each year served by him over 20 years. The answer to this contention is, as hereinbefore stated, that respondent's contractual right is limited to a substantial or reasonable pension.

If it be held that respondent is entitled to earn the additional 1-2/3 per cent because the repeal was ineffective as to him, then he would be placed in a more favored position than employees who had completed 20 years of service, but who, under the amendment, could not earn any additional pension.

We are in accord with appellants' contention that since the city had the power to modify the pension plan although it could not repeal it altogether, that section 187.1 should be construed as effective to limit respondent's pension right to 50 per cent of his salary. While the attempted repeal of all rights was void, the provision limiting pension rights is separable therefrom. It appears from the amendment that the electors of the city intended to reduce the liability for pensions created under section 187 to the extent of their power constitutionally to do so, and intended to preserve pension rights only to those who were eligible for retirement on the effective date. Although they could not deprive respondent and others similarly situated of all pension rights, they had the power to modify such rights, and it would seem to follow, therefore, that respondent is entitled only to those rights accorded by the amendment—that is, a limited pension. Those who were eligible for retirement on the effective date were entitled to the pension they had earned on the effective date and no more, while those who reached the 20-year mark subsequent to the effective date became eligible for retirement on a 50 per cent pension and no more.

The law appears to be well settled that where an attempted repeal of a statute is unconstitutional as to a portion thereof, but is constitutional as to the remainder, and the two portions of the statute are separable, then the repeal will be effective with respect to the valid portion thereof if the legislative intent can be construed that the repeal was to be effective as to a part thereof. As above stated, it is apparent that it was the intention of the electorate to limit the benefits under section 187 of the charter to the extent of their ability to do so. The language in *Estate of Childs*, 18 Cal.2d 237, 245 [115 P.2d 432, 136 A.L.R. 333], is here pertinent: ". . . If the portion added in 1935 is unconstitutional because retroactive, it is apparent from what has

heretofore been said that it may be separated from the balance of the provision without stripping it of meaning or effect. This would be in accord with the well established rule that a portion of a statute may be declared unconstitutional without affecting the remainder of the act when the.result of the deletion of the unconstitutional portion will not make the statute meaningless and it can be said to have been the intention of the legislative to have the act stand with such deletion." See, also, *Robison* v. *Payne,* 20 Cal.App.2d 103, 106 [66 P.2d 710]; *McCabe* v. *Jefferds,* 122 Cal. 302, 304 [54 P. 897]; *People* v. *Lewis,* 13 Cal.2d 280, 284 [89 P.2d 388].

For the foregoing reasons, the judgment appealed from is modified by striking therefrom the words "and an additional one and two-thirds per cent (1-2/3%) of said salary for each year over twenty (20) years and less than thirty (30) years in the aggregate served by Petitioner before retirement." As so modified the judgment is affirmed, respondent to recover costs on appeal.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied August 18, 1949, and respondent's petition for a hearing by the Supreme Court was denied September 26, 1949.