[Civ. No. 19715.   Second Dist., Div. Two.   Dec. 17, 1953.]

GRANT L. RUSTAD, Appellant, v. CITY OF LONG BEACH et al., Respondents.

Kenneth Sperry for Appellant.

Irving M. Smith, City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Respondents.

MOORE, P. J.—Appellant was employed by respondent city as a member of its Fire Department July 16, 1941.  While discharging his duties as fireman on September 3, 1950, he

was so affected by poisonous fumes that he became ill and contracted "chronic severe bronchitis." His condition deteriorated until December 3, 1951, when it was determined to be dangerous for him to continue as a fireman. Despite appellant's application and his proofs of disability filed in January, 1952, the city council on May 6, 1952, denied his application for a disability pension as provided by section 187, subdivision 3, of the city charter. Basing his claim upon such section, appellant by judgment entered December 17, 1952, obtained a peremptory writ of mandate directing the city council to make an order granting appellant a disability pension from December 3, 1951, payable in equal monthly installments, in an amount equal to *50 per cent of the average monthly salary earned by appellant* "during the five years immediately preceding December 3rd, 1951, which said average monthly salary is to be determined by dividing the total salary earned by Petitioner during said five year period by the actual number of months during which he earned said salary, and further directing Respondents, and each of them, to take such steps as may be necessary to pay or cause to be paid to Petitioner forthwith the disability pension payments which have heretofore accrued to date and likewise such payments as may hereafter accrue in the future in accordance with the provisions of Section 187, Subdivision (3) as limited by the provisions of Section 187.2 of the City Charter . . ."

Appellant is not dissatisfied with the judgment in its entirety but appeals from that portion which decrees "that petitioner is not entitled to receive the disability pension provided for by Section 187, Subdivision (3) of the City Charter . . . i.e. a monthly pension equal to fifty per cent of the salary attached to the rank held by Petitioner at time of retirement, and which varies according to the salary currently attached to said rank." That appellant misconceived his rights under the charter will presently appear.

At the times of appellant's employment and accident, section 187, subdivision 3, of the charter provided as follows:

"Whenever any member of the Police or Fire Department shall become physically disabled or by reason of bodily injuries received in, or by reason of sickness caused by the discharge of duties of such person in such department, or shall become so physically or mentally disabled as a result of such injury or sickness as to render necessary his retirement from active service, the commission shall order and

direct that such person be retired from further service in such department; and thereafter such person so retired shall, during his lifetime, be paid from said pension fund a yearly pension equal to one-half (½) of the amount of the salary attached to the rank or position held by him in such department at the date of such retirement order." (Stats. 1925, p. 1335.) Because the trial court did not follow the quoted section in fixing appellant's pension, he insists that he has been denied his rights under such section. After appellant's injury, but before he became disabled and entitled to be paid his pension, section 187 had been repealed and section 187.2 had been adopted (June 5, 1951), providing as follows:

"(b) The amount to be paid as a pension to each person who shall be granted a pension subsequent to the effective date of this amendment pursuant to the rights thereto vested by reason of the provisions of Section 187 of this Charter prior to the repeal thereof by the adoption of Section 187.1 hereof, shall be based in each instance upon the applicable percentage of the average monthly salary earned during the five (5) years immediately preceding the retirement or death of the person whose service formed the basis for such right to a pension. Such average monthly salary shall be determined by dividing the total salary earned by such person during said five-year period by the number of months during which such person earned such salary."

Appellant contends that the section 187.2(b) does not apply to him for the reason that he was injured prior to its adoption and that, therefore, its application to him is unconstitutional. He quotes the stray sentence in *Holt* v. *Board of Police & Fire Pension Comrs.*, 86 Cal.App.2d 714, 717 [196 P.2d 94],* and maintains that (1) section 187.2 was not intended to apply to pension benefits payable by reason of injuries previously sustained by existing members of the police and fire departments of Long Beach, and (2) that section 187.2 violates the provisions of due process of both state and federal Constitutions.

### SECTION 187.2 IS APPLICABLE

Appellant contends that it is impossible to determine that the new section was intended to apply to "pensions granted subsequent to the effective date of the amendment by reason of a service-connected injury which had been previously sustained by an employee." ▆▆ He says that appellant's

---

*"The contingency in the instant case was the accident which disabled officer Holt."

right stems from an injury received by him prior to the adoption of section 187.2. He hitches his wagon to our decision in *Holt* v. *Board of Police & Fire Pension Comrs.* and on the strength of it argues that appellant's right to receive a disability pension became vested upon the happening of the accident. Such is not the law. ■ The right to receive a reasonable disability pension accrues immediately upon a fireman's employment by the city of Long Beach. His right to retirement and immediate commencement of payment of his pension accrues only upon his disability's becoming established. Such is the right guaranteed by the federal Constitution. (Art. I, § 10; amend. 14, § 1; *Allen* v. *City of Long Beach,* 101 Cal.App.2d 15 [224 P.2d 792].)

■ The interpretation of subdivision (3) of section 187 was clearly set forth in *Tyra* v. *Board of Police & Fire Pension Comrs.,* 32 Cal.2d 666 [197 P.2d 710]. Tyra received injuries in the course of duty in February, 1937. After having been granted workmen's compensation in March, 1942, he applied to the defendants for a pension, which was denied. He then sued to enforce his claim for a pension. Despite difficulties arising from Tyra's action to recover under workmen's compensation laws, it was proved that his disability was permanent and that he was entitled to the pension. "The duty of the defendants to grant the pension may not always attach automatically upon the happening of an accident as where the right to a widow's pension accrues upon the death of the employee. . . . Here something more than the happening of the injury was intended by a provision requiring the commission to order payment of pension whenever a member of the department should become so physically or mentally disabled as a result of the injury as to render necessary his retirement from active service." (*Ibid.,* p. 671.) That decision came two months* after the pronouncement in *Holt* v. *Board of Police & Fire Pension Comrs., supra,* and should have cured the erroneous statement in the opinion of the latter action. The point as to whether his accident or his disability was the "vital contingency" which sparked his right to collect a pension was not in issue. When the case was on appeal, the city was contesting Holt's right to a pension on two grounds, namely, (1) that he forfeited his

---

*The Holt decision was filed July 13, 1948. The decision in *Tyra* v. *Board of Police & Fire Pension Commissioners* was filed by the Supreme Court September 28, 1948, but it had been argued June 16, 1948.

right to a pension by virtue of his resignation previous to his application and (2) his having obtained judgment under the Workmen's Compensation Act for his injuries. The opinion emphasized the law with citations (p. 717) "that such pension rights become vested as to each employee at least on the happening of the contingency upon which the pension becomes payable." That such contingency is an applicant's disability had already been established. Three years earlier the Tyra case was reversed by reason of the trial court's failure to find "when plaintiff's condition became such as to render necessary his retirement from active service." (*Tyra* v. *Board of Police & Fire Pension Comrs.*, 71 Cal. App.2d 50, 53, 54 [162 P.2d 35].)

*Brooks* v. *Pension Board*, 30 Cal.App.2d 118 [85 P.2d 956], is especially pertinent to the point under consideration. Brooks was injured in April, 1932, but remained on active duty until the following October when he filed his application for a disability pension. At that time the charter authorized a pension of two thirds of his salary. His application was denied, but two years after the charter had been so changed in March, 1933, as to provide for a pension equal to 50 per cent of his salary, he renewed his application. A pension based on two thirds of his salary was granted. Thereafter the pension board determined it had made an erroneous order and reduced the pension to 50 per cent of his salary at the time of his retirement and debited his account in the sum he had been overpaid. In his action to compel payment in accordance with the original offer, the court, in approving the acts of the board, held that only "upon the occurrence of the contingencies prescribed in a pension statute does the right to a pension become vested . . . it is not the illness or injury, but the result therefrom, namely, the inability to perform the work that is the controlling factor in forcing the government to recognize the express or implied contract with its employee." (*Ibid.*, 121, 123.) It follows, therefore, that long before the Holt case was heard of, the courts of this state had announced their adherence to a rational interpretation of the statute which authorizes the payment of a disability pension after the employee has become disabled so as to render necessary his retirement. It had never been held that a fireman or policeman of Long Beach might collect a pension because he had merely been involved in an accident. There appears to be no sound excuse for relying upon the erroneous dictum in the Holt decision.

In his reply brief appellant presents a new construction of section 187.2, namely, it should be read ". . . pursuant to the rights . . . vested . . . prior to the repeal [of § 187] . . ." This view would have the section applicable only to rights vested prior to 1945, the date of the repeal of section 187 by the adoption of section 187.1. But a reading of the complete text, ". . . pursuant to the rights thereto vested by reason of the provisions of Section 187 of this Charter prior to the repeal thereof . . ." leads to a more reasonable and a grammatically correct construction, to wit, the phrase, "prior to the repeal thereof," refers to the provisions of section 187, not to the vesting. If appellant's view were to be followed, the city of Long Beach would be adopting a charter section in 1951 which would apply *only* to the unusual situation wherein the employee's right to the pension *vests* prior to 1945 but is not *applied for* until 1951.

### Section 187.2 Is Not Violative of Contract and Due Process Clauses

The fact that his pension granted December 3, 1951, was subsequent to the effective date of section 187.2 of the charter does not constitute a material factor. His disability was not established until that date and he was not entitled to a pension prior thereto. After section 187.1 had been added to the charter (Stats. 1945, p. 2950) it was held that "the statutory language is subject to the implied qualification that the governing body may make modifications and changes in the system. The employee does not have a right to any fixed or definite benefits, but only to a substantial or reasonable pension. There is no inconsistency therefore in holding that he has a vested right to a pension but that the amount, terms and conditions of the benefits may be altered." (*Kern* v. *City of Long Beach*, 29 Cal.2d 848, 855 [179 P.2d 799].) More than two years elapsed after the last cited decision when one Palaske undertook to collect from Long Beach a pension equal to two thirds of the annual salary attached to the rank held by him one year prior to the date of retirement as provided by section 187, subdivision 2, of the charter. Many issues were adjudicated but on appeal it was held "that it was within the power of the city to modify its pension plan to provide that on or after the effective date of the amendment an employee who was entitled to retire might do so or not, as he saw fit, but that if he chose to continue as an employee he could not thereby earn any additional pension above that to which he was entitled on

the effective date of the amendment." ▮ An employee has a vested right only to a substantial and reasonable pension, but such right is not impaired by legislation which merely withdraws any right or option to earn a bonus by continuing in employment after he has become eligible for retirement. (*Palaske* v. *City of Long Beach,* 93 Cal.App.2d 120, 132 [208 P.2d 764].) That opinion was followed by the same court in *Allen* v. *City of Long Beach,* 101 Cal.App.2d 15, 20 [224 P.2d 792]. In *Packer* v. *Board of Retirement,* 35 Cal.2d 212 [217 P.2d 660], the court in April, 1950, in reaffirming its decision in *Kern* v. *City of Long Beach, supra,* held that (1) a public employee as a part of his compensation acquired with his employment a vested right to a pension; (2) the right, once acquired, could not be wholly destroyed by repeal of the pension law prior to his retirement; (3) the employee is not entitled to any fixed benefit, but only to a substantial pension; and (4) the statute is subject to the implied qualification that reasonable changes in the system may be made.

These authorities are explained and distinguished in *Terry* v. *City of Berkeley,* 41 Cal.2d 698 [263 P.2d 833], wherein the court stated, "The cited cases are authority for the proposition that reasonable changes detrimental to the pensioner may be made in pension provisions for public employees or their beneficiaries before the happening of the contingency." In that case, the city of Berkeley's attempt to reduce the amount of a pension four years after the pensioner's retirement was held to be in violation of contractual rights acquired on his retirement, the time when the last condition precedent to the obligation of the city was fulfilled.

In support of appellant Rustad's contention that he is entitled to a pension provided for by the city charter in force at the time of his injury, he cites *Chaney* v. *Los Angeles County Peace Officers' Retirement Board,* 59 Cal.App.2d 413 [138 P.2d 735]. It is not pertinent. This court there (p. 415) attempted to show that the effect of the section was merely to afford members retired prior to the 1941 amendment the privilege of accepting benefits of the amendment or of retaining their rights under the act as it read at the time of retirement. It was held that the language of the section does not indicate that the legislative intent was to provide a different formula for an injured employee not yet eligible for retirement on the effective date of the section from that which was intended for an employee who might become eligible for a pension upon the occurrence of other contingencies.

Also, he argues that the statute does not fix the amount for employees retired from active service on account of previous injuries. While the charter did not enumerate the various types of condition required to exist to make the statute operative, yet because appellant was granted a pension subsequent to the effective date of section 187.2, he is such a person. By reason of the broad language used in the section, appellant was entitled to a pension based upon the formula prescribed in section 187.2.

Judgment affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied January 8, 1954, and appellant's petition for a hearing by the Supreme Court was denied February 10, 1954. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.