[Civ. No. 20020. Second Dist., Div. Three. July 6, 1954.]

NELDA D. ENGLISH et al., Respondents, v. CITY OF LONG BEACH et al., Appellants.

Irving M. Smith, City Attorney (Long Beach), and Clifford E. Hayes, Deputy City Attorney, for Appellants.

Kenneth Sperry for Respondents.

SHINN, P. J.—In this proceeding in mandate the judgment directs the city of Long Beach and certain individuals in their respective capacities to take the necessary action for and to make payment of certain sums accrued and to accrue under the pension rights of petitioners as the surviving wife and minor daughter of Henry W. English, deceased, who was a patrolman in the police department of the city. (Stats. 1931, p. 2785.) The litigation has a history ([Cal.App.] 209 P.2d 403; 35 Cal.2d 155 [217 P.2d 22, 18 A.L.R.2d 547]; 114 Cal.App.2d 311 [250 P.2d 298]). In the present proceeding it was stipulated that the death of Mr. English resulted from injuries received in the course of his employment as a member of the Long Beach Police Department. By stipulation the cause was submitted on petitioners' motion for judgment on the pleadings and upon the questions of law which we shall presently discuss. The judgment followed an order granting the motion.

Mr. English ceased active service April 5, 1950, because of service connected disability. He did not apply for a disability pension. He died April 11, 1950. At that time a pension was granted by the city charter in the amount of 50 per cent of the salary attached to the rank or position held by the employee at the time of death. Nelda D. English was entitled to the pension from the time of the death of

Mr. English until she remarried, September 6, 1951; thereafter the daughter, Susan Cheryl, was entitled to receive the pension until she became 18 years of age. (City Charter, § 187, subd. (4).)

■ Petitioners' right to a pension which vested in them upon the death of Mr. English was not limited to 50 per cent of·the amount of salary as of the time of death but followed any changes that might be made in the salary attached to the rank of patrolman. (*Casserly* v. *City of Oakland,* 6 Cal.2d 64 [56 P.2d 237]; *Terry* v. *City of Berkeley,* 41 Cal.2d 698 [263 P.2d 833].) The salary of a patrolman which was $305 per month from April 11, 1950, to July 1, 1951, was increased to $335 per month from July 1, 1951, to July 18, 1951, $355 per month from July 18, 1951, to July 1, 1952, and, from July 1, 1952, to date, to $370 per month.

Mrs. English applied to the city for a widow's pension February 14, 1951, and thereafter, effective June 5, 1951, a charter amendment, section 187.2, was adopted. The substance of the amendment to be considered is that it altered the basis for determining the amount of the pension. Instead of a pension of 50 per cent of the salary attached to the rank or position of the employee from time to time it was fixed by the amendment at 50 per cent of the salary payable at the effective date of the amendment, and the amendment purported to apply to all pensions theretofore granted under section 187.

The questions are the following: (1) Was the amendment effective to change the pension from a fluctuating amount to a fixed amount as to both petitioners; (2) was it effective as to Cheryl; (3) did the court err in striking the cross-complaint of the city by which it was sought to cancel the contract of employment of Mr. English upon the ground that he had obtained employment with the city through fraud?

The city contends that the charter amendment is valid if it ·left petitioners with a reasonable and substantial pension. This has frequently been held to be a proper test of the validity of changes in pension plans made before the pension has been fully earned and become payable. (*Kern* v. *City of Long Beach,* 29 Cal.2d 848 [179 P.2d 799]; *Packer* v. *Board of Retirement,* 35 Cal.2d 212 [217 P.2d 660]; *Palaske* v. *City of Long Beach,* 93 Cal.App.2d 120 [208 P.2d 764]; *Allen* v. *City of Long Beach,* 101 Cal.App.2d 15 [224 P.2d 792]; *Sweesy* v. *Los Angeles etc. Retirement Board,* 17 Cal.2d 356 [110 P.2d 37]; *Brophy* v. *Employees Retirement System,* 71 Cal.App.2d 455 [162 P.2d 939]; *McCarthy* v. *City of*

*Oakland,* 60 Cal.App.2d 546 [141 P.2d 4]; *Brooks* v. *Pension Board,* 30 Cal.App.2d 118 [85 P.2d 956].) It was adopted in two unreported decisions of the Appellate Department of the Superior Court of Los Angeles County, cited by the city, which sustained the validity of the charter amendment here in question. (*Larson* v. *City of Long Beach,* Superior Court Civ. A. No. 8063 and *Thompson* v. *City of Long Beach,* Superior Court, Civ. A. No. 8064.) The appellate department decisions were stated by the court to be based upon the reasoning in the Kern, Packer, Palaske and Allen cases. Shortly thereafter the Supreme Court decided *Terry* v. *City of Berkeley,* 41 Cal.2d 698, *supra.* In that case Terry had retired with a right to a pension the amount of which, the court held, would fluctuate with any increase or decrease of salary attached to the position held at the time of retirement. Thereafter the pension ordinance was amended to provide a pension based upon the salary at the time of retirement and which would not increase or decrease with any change of salary. After Terry had retired several salary increases were granted but the city, relying on the amendment of the ordinance, refused to pay him more than the initial amount of his pension. He sued and recovered judgment for the accumulated amounts based upon the increases of salary attached to the position. The judgment was affirmed. The city contended, as it contends here, that the change in the petitioner's pension rights was valid if it left Terry a reasonable and substantial pension. Reliance was placed upon the decisions listed above. As to those it was said that the court had not had before it (pp. 702, 703): ''. . . the question of the obligation due a pensioner after his status had become fixed by the happening of the contingency which made the pension due and payable. The cited cases are authority for the proposition that reasonable changes detrimental to the pensioner may be made in pension provisions for public employees or their beneficiaries before the happening of the contingency. . . .

''In the present case the plaintiff had been retired; he had rendered the called-for performance; he had done everything possible to entitle him to the payment of his pension and all conditions precedent to the obligation of the city were fulfilled upon the determination that he be retired as a result of his service-connected disability. The pension payments are in effect deferred compensation to which the petitioner becomes entitled upon the fulfillment of the terms of the con-

tract which may not be changed to his detriment by subsequent amendment. (*Robertson* v. *Miller*, 276 U.S. 174 [48 S.Ct. 266, 72 L.Ed. 517]; *Kern* v. *City of Long Beach, supra*, 29 Cal.2d 848; *Kavanagh* v. *Board of Police P. F. Commrs.*, 134 Cal. 50 [66 P. 36]; *Vero* v. *Sacramento City E. R. System*, 41 Cal.App.2d 482 [107 P.2d 82]; 20 Cal.Jur. 998.) . . .

"[T]he amended section did not affect the plaintiff's retirement benefits."

██ In the case of Mr. English, as in the case of Terry, the attempted change was from a fluctuating amount to a fixed amount and the effect of the attempted change was to deprive the beneficiary of the benefit due to the increases in salary. The city refuses to recognize the authority of the decision in the Terry case by insisting that the decisions of the appellate department of the superior court are controlling, for the reason that the Supreme Court of the United States refused to review them. The contention is obviously without merit.

In *Wallace* v. *City of Fresno*, 42 Cal.2d 180 [265 P.2d 844], a retired member of the police department had been convicted of a felony, which fact, under the pension ordinance in effect at the time he entered the service of the city, would not have given the city the right to terminate his pension. Later ordinances, adopted before his retirement, purported to give the city that right. In holding these provisions to be unreasonable and unenforceable as to Wallace the court said (p. 185): "A city has no more right to adopt an amendment which does not come within the purpose of the rule permitting modifications than a private insurance carrier would have to change an annuity policy by making a unilateral amendment under which the insured's interest might be terminated upon his conviction of a felony."

We find no merit in the argument of the city that if in the future salaries are reduced below the June 5, 1951, level pensioners will then receive more than they would be entitled to under the fluctuating scale, and in the long run may suffer no loss. Pensioners need their money as it falls due and cannot be required to exchange it for the promise that if they live long enough they may possibly get it back.

We conclude that section 187.2 of the charter may not be given effect to impair petitioners' pension rights as they originally existed.

██ Petitioner Susan Cheryl English at the time she became a petitioner through her guardian *ad litem* was 7

years of age. Nelda, her mother, remarried September 6, 1951. Thereupon, pursuant to section 187, subdivision (4), of the charter Nelda's pension right terminated and Cheryl became entitled to draw a dependent's pension until she attains the age of 18 years or marries. The city contends that since section 187.2 became effective prior to the marriage of her mother Cheryl has no rights except those provided by that section, citing *Jordan* v. *Retirement Board,* 35 Cal.App.2d 653 [96 P.2d 973]; *Packer* v. *Board of Retirement,* 35 Cal.2d 212, *supra*; *Sweesy* v. *Los Angeles etc. Retirement Board,* 17 Cal.2d 356, *supra,* and *Rustad* v. *City of Long Beach,* 122 Cal.App.2d 106 [264 P.2d 955]. None of these cases is in point. Each one involved some change in the claimant's pension rights made before the right had vested, that is to say, before the claimant became entitled to receive a pension through the happening of some contingency which would fasten upon the public employer an obligation to pay a pension in a definite amount. The changes were held valid for the reason that at the time they were made the services of the employee had not been fully rendered and the employer's obligation had not become absolute. This is not our case. Cheryl's right vested at the time the city's obligation became a fixed liability, namely, upon the death of her father under circumstances which entitled her mother and herself to a pension. It could not be taken from her by subsequent action of the city, nor be modified in a manner that would substantially reduce the amount of the city's obligation. ■ It is axiomatic that pension laws will be construed liberally and in a manner to give effect to their beneficent purpose. The children of the employee and his surviving wife become entitled to receive the pension from the city of Long Beach upon their mother's death, or upon her remarriage. (*Filian* v. *City of Long Beach,* 109 Cal.App.2d 611 [241 P.2d 56].) The pension has been fully earned, the obligation of the city is no longer conditional. It is a contract protected by constitutional guaranties; the first beneficiary is the mother, the second the child or children, and the latter's rights are vested and entitled to protection although the time of enjoyment is deferred. Any other construction would concede to the city the right to drastically reduce its obligation to the child at any time before the death or remarriage of the mother. There would be little appeal to the employee and little value in a pension plan under which the employer could at will reduce the amount of the pension after it had become fully earned and

payable. The trial court correctly held that the city must keep its contract by paying the pension which accrued to September 6, 1951, to Nelda D. Wentworth and thereafter to Susan Cheryl English until she attains the age of 18.

■ The final contention is that the court erred in striking out the cross-complaint of the city by which it sought a decree cancelling the contract of employment of Mr. English upon the ground that he had obtained employment by the concealment of facts concerning his physical condition. It was alleged on information and belief that when he took his physical examination on July 13, 1942, two days before he entered the service of the city, he falsely and fraudulently failed to disclose the fact that he had had rheumatic fever, and denied that he had suffered from heart disease, and that but for his concealment and false statements he would not have been employed. It was also alleged that there was the same concealment in 1945 when he was given another physical examination. It appears to be the theory that the court should order rescission of the contract of employment although nothing remains to be done under it other than to make payment of the pension. There are several reasons for holding that the allegations of the cross-complaint were insufficient. We shall mention only one of them. It was alleged that the city did not ascertain that Mr. English had suffered from rheumatic fever and that his heart had been damaged thereby until a hearing before the Industrial Accident Commission subsequent to the filing of the application of Mrs. English for a widow's pension on February 14, 1951. This was not an allegation that the city discovered anything, or how any facts were discovered. The allegations would be literally true if the city had discovered nothing. It made its charges of fraud on information and belief. Mr. English is not here to deny them. Some nine years elapsed between the commission of the alleged fraud and its alleged discovery. The city cites no authority for its contention and it is unnecessary to delve into the question whether the remedy of rescission for such alleged fraud would be available to defeat a pension right that had been fully earned.

The cross-complaint was patently defective in failing to allege that the city ever discovered any facts that had been concealed or misrepresented and the circumstances of the discovery. (*Lady Washington C. Co.* v. *Wood,* 113 Cal. 482 [45 P. 809]; *Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698 [16 P.2d 268]; *Victor Oil Co.* v. *Drum,* 184 Cal. 226

[193 P. 243] ; *Denike* v. *Santa Clara Valley Agr. Soc.,* 9 Cal. App. 228 [98 P. 687] ; *Brown* v. *Butler,* 3 Cal.App.2d 11 [39 P.2d 244].)  There is a wealth of authority which supports the statement in *Watson* v. *Santa Carmelita etc. Co.,* 58 Cal.App.2d 709, 716 [137 P.2d 757] : "In order to avoid the bar of the statute the plaintiff must plead the time when the fraud was discovered and of what the discovery consisted that the court may clearly see whether by reasonable diligence the discovery might not have been made before. He must fully state the circumstances under which the discovery was made and must show that the delay in filing the action is consistent with the requisite diligence. (*Phelps* v. *Grady,* 168 Cal. 73 [141 P. 926].)" The city did not seek nor indicate a desire to amend. The cross-complaint was properly stricken. No other points are discussed in the briefs.

The purported appeal from the order striking out the cross-complaint is dismissed.

The judgment is affirmed.

Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 2, 1954.