DECISION
These matters are each before the Court for decision on cross-motions for summary judgment filed pursuant to Super. Ct. R. Civ. P. 56.[1] Both plaintiffs are former Warwick firefighters, retired for service-related disabilities. The defendants include the City of Warwick; Robert Donohue, Marshall Martin, and Dianna Pearson who are sued individually and in their official capacities as members of the Warwick Board of Public Safety;[2] and John E. Martin, Warwick City Treasurer, who is also sued both individually and officially. The facts giving rise to the instant motions are not in dispute and are as follows:
Harold J. Nonnenmacher and Donald E. Sjogren (hereinafter referred to collectively as "the Plaintiffs" unless otherwise specified) became "permanent members" of the Warwick Fire Department in 1967.[3] During this time and continuing to their retirement, the Plaintiffs had monies deducted from their salaries and placed into a pension fund as specified under the Warwick Code. Under the terms of the disability pension system then in effect, a disabled firefighter could receive in benefits an annual sum not less than 50% of his/her salary. For years, the Board arbitrarily (and in violation of due process) awarded disabled firefighters pensions ranging in amount from 50% to 75% of their salaries until March 9, 1977, when the Board adopted as a rule a flat rate of 66 2/3% for all pending and future cases involving firefighters with service-related disabilities. SeeWaterman v. Members of the Bd. of Pub. Safety, No. 77-0222, slip op. at 1-3, 6, 21, 24-25 n. 6 (D. R.I. July 15, 1981).
In January 1980, the City of Warwick officially enacted into its code an ordinance establishing that all "permanent" firefighters with service-related disabilities would be awarded a pension at 66 2/3% of their highest salaries. Of importance to the instant case, that same ordinance contained a potential limitation of pension benefits going to said firefighters who have accepted outside employment. Specifically, § 7-75.2 (b) of the Warwick Code of Ordinances provides:
 "When any officer or permanent member of the fire department is on a service disability pension, such officer or member shall file every six (6) months with the board of public safety a sworn written report of his earned income for the six-month period immediately preceding the filing of this report, together with such supporting data as may reasonably be required. `Earned income' is defined as amounts received as compensation for services rendered. The officer or member's pension amount for the following six (6) months after the filing of the report of earned income shall be reduced dollar for dollar by any amount that the actual earned income exceeded the salary paid to an officer or permanent member with the retired member's highest rank and seniority on active duty at the time such resorts are filed. However, in no event shall any officer or member on pension receive an annual sum less than fifty (50) percent of his highest salary as a fireman." Warwick Code § 7-75.2 (b) (emphasis added) (hereinafter referred to as § 7-75.2 (b)).[4]
After the enactment of § 7-75.2 (b), the Board retired Plaintiffs due to service-related injures.[5] At that time, Plaintiffs had attained the rank of lieutenant within the Warwick Fire Department, and their disability pensions were paid out accordingly. Of note, however, is the fact that prior to their retirement, Plaintiffs, in addition to their work as firefighters, had taken on other, outside employment and remained so employed after retirement. As a result, and because Plaintiffs apparently exceeded the outside earnings limitation, the Board recently sought refunds from the Plaintiffs (pursuant to § 7-75.2 (b)) for earned income over and above what lieutenants in the Warwick Fire Department were then receiving.[6]
Consequently, Plaintiffs filed suit under 42 U.S.C. § 1983
contesting the legality of § 7-75.2 (b) as applied to them.[7] More specifically, Plaintiffs argue that § 7-75.2 (b) violates Article 1, Section 10, Clause 1 of the United States Constitution, also known as the Contract Clause, to the extent that it interferes with or impairs their vested disability pension rights. Accordingly, Plaintiffs contend that they are not subject to the provisions of § 7-75.2 (b), and they seek to enjoin the defendants from enforcing it against them.
With these facts as background, the Court will now turn to its legal analysis of this matter.[8]
Essentially, this Court is being asked to determine whether the enforcement of § 7-75.2 (b) by the defendants against Plaintiffs violates the Contract Clause of the United States Constitution.[9] Plaintiffs, citing an abundance of case law mainly from foreign jurisdictions, strenuously argue that they had a vested contractual right to disability pension benefits prior to the time § 7-75.2 (b) was enacted, and the earnings limitation present in that ordinance adversely impaired their vested pension rights in violation of the Contract Clause. The defendants also present an impressive array of such cases to buttress their own position. They urge that there was no unconstitutional impairment because no contract rights in disability benefits had vested when § 7-75.2 (b) was enacted. Alternatively, the defendants contend that even if Plaintiffs had vested rights in their disability pensions before the enactment of § 7-75.2 (b), the ordinance is reasonable and necessary to serve an important governmental interest and thus does not violate the Contract Clause.
The Contract Clause of the United States Constitution prohibits a state from passing any law impairing the obligation of contracts. See U.S. Const. art. I, § 10, cl. 1.[10] Put another way, the Contract Clause limits the power of a state to modify its own contracts and to regulate private contracts.Brennan v. Kirby, 529 A.2d 633, 638 (R.I. 1987) (citing UnitedStates Trust Co. of New York v. New Jersey, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)). In the instant case, the threshold inquiry concerns whether the enactment and enforcement of § 7-75.2 (b) has, in fact, operated as a substantial impairment of a contractual relationship — namely, Plaintiffs' claimed contractual rights to a disability pension. See Energy ReservesGroup, Inc. v. Kansas Power Light Co., 459 U.S. 400, 411, 413, 103 S.Ct. 697, 704-05, 74 L.Ed.2d 569 (1983). This inquiry has three elements: whether a contract exists, whether the law in question impairs an obligation or a right under that contract, and whether said impairment is substantial. Retired AdjunctProfessors v. Almond, No. 95-720, slip op. at 2 n. 2 (R.I. filed Mar. 13, 1997). Even if the law constitutes a substantial impairment, it will still pass constitutional muster if it is reasonable and necessary to serve a legitimate public purpose.Id.
The first step in analyzing this constitutional challenge thus requires this Court to determine whether or not a contractual right to disability pension benefits in fact existed when § 7-75.2 (b) was enacted. Only with respect to those contracts in which the parties have a vested interest are the parties afforded protection from impairment under the Contract Clause of the United States Constitution. See Trustees ofDartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 641-42 (1819). Citing Warwick, R.I., Ord. No. 0-61-101 (May 18, 1961) (codified as amended at Warwick Code § 7-75),[11] the Plaintiffs argue that their rights to a disability pension vested in 1967 when they were appointed as permanent firemen of the Warwick Fire Department; as such, they claim they satisfied the eligibility requirements under the Warwick Code for a disability pension. As a result, Plaintiffs contend that they acquired a vested contractual right to disability pension benefits for purposes of the Contract Clause in 1967 — well before the enactment of § 7-75.2 (b). Relying upon the same ordinance, the defendants, on the other hand, argue that the Plaintiffs had no vested interest in disability pension benefits until the moment they became unfit to perform active duty, which occurred after the enactment of § 7-75.2 (b).
Both sides made reference to the Rhode Island Supreme Court case of Matter of Almeida in support of their arguments on this issue. The Court is mindful that the Almeida court declined to categorize a pension a certain way (i.e. as a gratuity of the state, as a contract, as deferred compensation, etc.) and thus did not comment specifically on when rights to pension benefits vest. See Matter of Almeida, 611 A.2d 1375, 1385-86 (R.I. 1992). However, the Almeida court did state that ". . . a pension comprises elements of both the deferred compensation and the contract theories. The right to deferred compensation vests upon meeting the terms of employment, . . . ."[12] In their supplemental memorandum, the Plaintiffs argue that becoming disabled cannot reasonably be considered a term of employment. This Court agrees. See also National Education Association-RhodeIsland v. Retirement Board of the Rhode Island Employees'Retirement System, 890 F. Supp. 1143, 1155-56 (D. R.I. 1995) (noting that under either theory, "the employee has some contractual rights in receiving a pension"). Moreover, the Court notes that Plaintiffs gave consideration for these pension benefits; while they served as firemen, a portion of their salaries was deducted and placed into the pension fund.[13]
Therefore, in the view of this Court, the Plaintiffs clearly were vested with contractual rights to a disability pension prior to the enactment of § 7-75.2 (b) and, there being a valid "contract or contractual agreement," they have thus cleared this first hurdle.
The next issue to be addressed is whether the Plaintiffs' contractual rights have been substantially impaired. The Court acknowledges Plaintiffs' argument on this point and is willing to concede that § 7-75.2 (b) operates as a substantial impairment of their aforementioned vested contractual rights as it could potentially cost the Plaintiffs a significant amount of money in compulsory reimbursements. However, the Court notes that § 7-75.2 (b) comes into play only when the Plaintiffs' earned income after retirement exceeds that of a current firefighter of the same rank, and then it can only reduce Plaintiffs' pension benefits at most from 66 2/3% of their prior salaries down to 50%. See Warwick Code § 7-75.2 (b).
The final inquiry in this analysis under the Contract Clause, the determination of whether § 7-75.2 (b) is reasonable and necessary to serve a legitimate public purpose, thus becomes dispositive of this case. On this issue, the Plaintiffs argue, in elaborate detail, that § 7-75.2 (b) is not necessary to the successful operation of the pension fund because it does not address the issue of the unfunded actuarial liability of the fund, and it has had an insignificant effect on the funding of the pension system. Moreover, the Plaintiffs claim that the ordinance is unreasonable because it is not accompanied by comparable advantages to offset the disadvantages it entails.[14] The defendants, on the other hand, contend that any money saved on account of § 7-75.2 (b) helps decrease the unfunded liability and will help preserve and enhance the fund for those who will need it in the future. In addition, the defendants urge that the ordinance serves the legitimate governmental interest of balancing the public interest in fiscal responsibility with the interest of compensating disabled firefighters for injuries sustained in the line of duty. Finally, the defendants assert that § 7-75.2 (b) is reasonable because although Plaintiffs became subject to the income offset in 1980, at the same time they also received the corresponding benefit of a uniform rule setting the pension rate at 66 2/3%; this objective rule remedied the aforementioned constitutional deficiencies inherent in the old system.[15]
It is well-settled that not every impairment results in a violation of the Contract Clause. See United States Trust Co. ofNew York v. New Jersey, 431 U.S. 1, 25, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92 (1977). Importantly, the governing body possesses a reserved legislative power to modify pension benefits; pension rights may be modified if the modifications are reasonable, they bear a material relation to the theory of the pension system and its successful operation, and when resulting in disadvantage to employees, they must also afford comparable new advantages. See,e.g., Knight v. Board of Administration, 223 Cal.App.3d 142, 273 Cal.Rptr. 120, 153 (Ct. App. 1990) (stating that it is for the courts to determine on the facts of each case what constitutes a permissible change); Gatewood v. Board ofRetirement, 175 Cal.App.3d 311, 320, 220 Cal.Rptr. 724, 729 (Ct. App. 1985) (revealing that until the pension becomes payable, the employee "does not have a right to any fixed or definite pension but only to a substantial or reasonable pension"); 60A Am.Jur.2d Pensions and Retirement Funds §§ 1623, 1625 (1988). See also Rustad v. City of Long Beach etal., 122 Cal.App.2d 106, 111, 264 P.2d 955, 958 (noting that there is no inconsistency in holding that one has a vested right to a pension but that the amount, terms and conditions of the benefits may be altered). This rule permitting the modification of pensions is necessary because "pension systems must be kept flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system and carry out its beneficent policy." Knight, 273 Cal.Rptr. at 152; see Retired Adjunct Professors v. Almond, No. 95-720, slip op. at 6-7 (R.I. filed Mar. 13, 1997).
In the view of this Court, the above rule has been met; the enactment of § 7-75.2 (b) was a reasonable and necessary means of advancing the government's legitimate interest in flexibility. In addition, this Court agrees with the defendants in that § 7-75.2 (b) furthers the public interest in fiscal responsibility. See also Retired Adjunct Professors v. Almond,
No. 95-720, slip op. at 8-9 (R.I. filed Mar. 13, 1997). Moreover, the Court notes that because the Board passed the March 9, 1977 resolution "[p]ending the adoption of a final, formal regulation," Waterman v. Members of the Bd. of Pub. Safety, No. 77-0222, slip op. at 5 (D. R.I. July 15, 1981), the Plaintiffs were given a comparable advantage when the Warwick City Council enacted the income offset at the same time in 1980. Plaintiffs, vested with contractual rights to a pension, were still entitled to substantially the same level of disability pension benefits even after the enactment of § 7-75.2 (b). Thus, for all of the foregoing reasons, Plaintiffs' constitutional challenge must fail.
As stated at the outset, both parties submitted motions for summary judgment based on the facts and arguments previously set forth. It is well-settled that the constitutionality of a statute or ordinance is a question of law susceptible of determination on summary judgment. See Power v. City of Providence,582 A.2d 895, 902 (R.I. 1990). Moreover, summary judgment should enter when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See,e.g., Hopp v. C.H.B. Dev. Corp., 669 A.2d 1152, 1154 (R.I. 1996); Alfano v. Landers, 585 A.2d 651, 652 (R.I. 1991);Tangleridge Dev. Corp. v. Joslin, 570 A.2d 1109 (R.I. 1990)
In the instant case, the underlying action primarily seeks a declaratory judgment and the material facts are not in dispute. Furthermore, the sole question presented is a question of law involving a determination of the constitutionality of § 7-75.2 (b) as applied to Plaintiffs. Hence, this matter is one which can properly be resolved on summary judgment.
The Court has considered the arguments of counsel and has carefully examined and reviewed the memoranda submitted by the parties. After due consideration, the Court finds that the enactment and enforcement of § 7-75.2 (b) does not violate Plaintiffs' constitutional rights. Accordingly, Plaintiffs' motion for summary judgment is denied, and the defendants' cross-motion for summary judgment is granted.
Counsel for the prevailing party shall submit an appropriate judgment for entry.
[1] Because the two above-captioned actions contain similar facts and involve the same legal issues, both causes can and will be decided together herein.
[2] The Warwick Board of Public Safety (hereinafter referred to as the Board) is responsible for administering the city's firefighters' pension system.
[3] The Warwick Code defines a permanent fireman as any member of the department appointed on or after January 1, 1942. However, if said member was appointed on or after December 15, 1955, he/she shall have served at least a six-month probationary period before receiving his/her permanent appointment. Warwick Code § 7-66.
[4] "Section 7-75.2 (b)" reflects the current status and placement of this provision in the Warwick Code; the income offset provision was originally enacted, in almost the exact same form as above, at a different code section. For the sake of convenience, this provision will be referred to throughout this decision as § 7-75.2 (b).
[5] Mr. Sjogren was initially retired due to a non-service-related disability, but the Board later changed his retirement status to reflect a service-related disability.
[6] Mr. Nonnenmacher claims he has already refunded over $3,000 pursuant to the Board's request.
[7] Section 1983, entitled "Civil action for deprivation of rights," states:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . ." 42 U.S.C.S. § 1983 (Law. Co-op 1994).
Plaintiffs also seek attorney fees and costs pursuant to42 U.S.C. § 1988.
[8] Such additional facts as are necessary to this decision shall be set forth in the discussion of the law that follows.
[9] Some time ago, this Court noted Plaintiffs' failure to comply with Super. Ct. R. Civ. P. 24 (d), R.I.G.L. § 9-30-11, and related case law concerning their obligation to notify the Attorney General that they are challenging the constitutionality of a municipal ordinance, and the Court sent a letter to counsel regarding this issue. Subsequently, Plaintiffs served the office of the Attorney General, who responded by letter dated January 13, 1997 stating their intention not to intervene.
[10] The Rhode Island Constitution also contains a similar prohibition, see R.I. Const., art. I, § 12, but this provision of our state constitution was not cited by Plaintiffs in their memoranda.
[11] This ordinance states, in pertinent part:
"[w]henever an officer or member of the permanent fire department shall become unfit to perform active duty by reason of mental or physical infirmity, or other causes, the board of public safety may place such officer or member upon the pension list and thereafter he shall be paid for the remainder of his life, semi-monthly such sums as are hereinafter designated . . . ."
[12] Earlier in the opinion, the Almeida court noted that under the contract theory, "the pension is completely vested once the employment contract is signed and employment begins" while "[t]he right to deferred compensation has been considered to vest when the employee completes the years of eligibility." Id.
at 1385.
[13] The Court also concurs with Plaintiffs' assertion that disability pension rights must vest earlier rather than later in order to act as an inducement to becoming a firefighter.
[14] Specifically, the Plaintiffs contend that the 1980 enactment merely codified the Board's 66 2/3% rule adopted in 1977. Thus, they claim they received nothing new in 1980, when the income offset provision of § 7-75.2 (b) was also enacted.
[15] Citing the NEA-RI case, 890 F. Supp. 1143 (D. R.I. 1995), the defendants alternatively argue that the Plaintiffs are not, as a matter of right, entitled to a corresponding benefit as a result of the enactment of § 7-75.2 (b); the modification need only be "reasonable and necessary to serve an important governmental interest."